780 F.2d 1158
 Billy Dan COON, Racheal Elizabeth Coon, Who Sues by Her
Guardian and Next Friend, Dana Coon, and Dana
Coon, Plaintiffs-Appellees, Cross-Appellants,
v.
John LEDBETTER, Individually and In His Capacity as Sheriff
of Jackson County, MS, et al.,
Defendants-Appellants, Cross-Appellees.
 Nos. 83-4215, 85-4048 and 85-4235.
 United States Court of Appeals,
Fifth Circuit.
 Jan. 16, 1986.
 
 Watkins & Eager, Frank J. Hammond, III, John G. Corlew, Jackson, Miss., for defendants-appellants, cross-appellees.
 Carol A. Cross, William Roberts Wilson, Jr., Robert W. Wilkinson, Pascagoula, Miss., for plaintiffs-appellees, cross-appellants.
 Appeals from the United States District Court for the Southern District of Mississippi.
 Before GARWOOD, DAVIS, and HIGGINBOTHAM, Circuit Judges.
 PATRICK E. HIGGINBOTHAM, Circuit Judge:
 
 
 1
 * When fighting led to shooting in a Mississippi tavern, Billy Dan Coon and his friend Buddy Nelson departed the scene. Coon said later that a man named Tanner had threatened him with a knife, stated that he knew where Coon lived, and warned that he would get him later. As Coon and Nelson drove away, apparently with dispatch, they hit another car, but quickly left that scene as well. Coon then left Nelson at Coon's father's house and went on to his own trailer home.
 
 
 2
 While sheriff's deputies were investigating the incident at the tavern, the hit-and-run accident was reported. Suspecting that Coon was involved, the deputies went to Coon's home but did not find him there. A deputy who knew Coon asked Coon's wife, Dana, to have Billy Dan call him. As the deputies were leaving, a car that looked like Coon's drove up from the woods behind the family's trailer home. The officers went to investigate.
 
 
 3
 Seeing the men approach and perhaps recalling Tanner's barroom threat, Coon moved toward a neighbor's trailer. Coon may not have been able to identify the men as peace officers; they were not using their warning lights, and it was too dark to make out their uniforms. The deputy who knew Coon called out, telling Coon his name and that he wanted to talk to him. Coon's wife also called out, telling him to come up and speak with the men. But Coon continued moving around, first toward the neighbor's place, and then to his own trailer, where he armed himself with a shotgun.
 
 
 4
 One deputy, spotting Coon with the gun, shouted a warning to the others. Coon then fired at least two shots. Coon claims that these were warning shots fired into the air, while the deputies claim that the shots were fired in their general direction. The officers took cover. Coon shouted a warning to the men to "get off my place," ran around the front of his trailer, and was shot by one of the officers. He struggled inside and at least one deputy fired into the trailer. Coon then came outside and collapsed.
 
 
 5
 Coon was taken to the hospital and treated for his wound. His wife has since received therapy for emotional problems. Their daughter Racheal, who was in the trailer during the shootout and was four years old at the time, experienced sleeplessness and nightmares afterward.
 
 
 6
 Criminal charges of aggravated assault, for shooting at Deputy Herrington, were filed against Coon; following a mistrial, he entered a guilty plea to the reduced charge of simple assault. Coon was also indicted for shooting at two of the other deputies, but was never prosecuted; an order of nolle prosequi was eventually entered in those cases.
 
 
 7
 After the criminal cases were concluded, Coon sued Sheriff Ledbetter and deputies Gussberry, Cushman, Herrington, Thompson, Parker, and Carter in their individual and official capacities, Jackson County, and United States Fidelity & Guaranty Company, the firm that bonded the sheriff. Coon asserted claims under 42 U.S.C. Sec. 1983 and under a state malicious prosecution law. The supervisors of Jackson County were at one point added as defendants; after additional discovery, however, the parties stipulated to a dismissal of these defendants with prejudice. Following a jury trial, directed verdicts were entered in favor of Jackson County and U.S.F. & G.; directed verdicts, which are not appealed from, were also entered in favor of three of the deputies. The jury returned a verdict against the sheriff and deputies Cushman, Gussberry, and Herrington, awarding Coon $50,000.00, his wife $115,243.86, and his daughter $13,775.00. Motions for a new trial or, in the alternative, for judgment notwithstanding the verdict, were denied. Judgment on the verdict was entered and all parties appeal.
 
 II
 
 8
 The numerous assigned errors fall into three main categories. First, the defendants argue that Coon's wife and daughter proved no deprivation of their own constitutional rights. Second, the Coons contend that because the acts of the deputies represented county policy, the district court improperly granted a directed verdict in favor of Jackson County; the Coons also argue that Sheriff Ledbetter and his bonding company are liable for the acts of his deputies under Mississippi law. Third, defendants argue that the court's charge to the jury was hopelessly confusing because it failed to distinguish between an ordinary suit for negligence and a claimed deprivation of constitutional right; because it misstated the deputies "defense" of good faith; and because the verdict form did not allow the jury to focus on each defendant separately.
 
 
 9
 * Dana and Racheal Coon, like all persons who claim a deprivation of constitutional rights, were required to prove some violation of their personal rights. See Dohaish v. Tooley, 670 F.2d 934 (10th Cir.), (right to bring action under civil rights act is personal in nature and does not accrue to a relative), cert. denied, 459 U.S. 826, 103 S.Ct. 60, 74 L.Ed.2d 63 (1982); English v. Powell, 592 F.2d 727 (4th Cir.1979) (wife had no standing to maintain action arising from husband's demotion on job); Shaw v. Garrison, 545 F.2d 980, 983 n. 4 (5th Cir.1977), rev'd on other grounds sub nom. Robertson v. Wegmann, 436 U.S. 584, 98 S.Ct. 1991, 56 L.Ed.2d 554 (1978); TOPIC v. Circle Realty Co., 532 F.2d 1273 (9th Cir.) (litigants have no standing to assert civil rights of third parties injured by unlawful conduct), cert. denied, 429 U.S. 859, 97 S.Ct. 160, 50 L.Ed.2d 137 (1976); Spence v. Staras, 507 F.2d 554 (7th Cir.1974); Hall v. Wooten, 506 F.2d 564 (6th Cir.1974); O'Malley v. Brierley, 477 F.2d 785, 789 (3d Cir.1973); Brown v. Board of Trustees, 187 F.2d 20 (5th Cir.1951). Whatever be their right as bystanders to recover under state tort law, we are persuaded that Racheal made the proof of personal loss required for a constitutional claim, but that Dana did not. There was no evidence that any act of the deputies was directed toward Dana; she was not directly involved in the shooting and was with the deputies when it occurred. Racheal, however, was in the trailer. There was evidence that Coon staggered into his trailer and while he was there attempted to protect Racheal from the gunfire, and there was evidence that deputy Gussberry fired a round of heavy buckshot into the trailer at that time. Further, the jury could have concluded that the deputies knew or should have known that other persons besides Billy Dan Coon were in the trailer, so that the requisite level of reckless conduct, as we will discuss, was met.
 
 2
 
 10
 We are persuaded that the district court correctly directed a verdict in favor of Jackson County. There was no evidence that Sheriff Ledbetter, or any other person who could be characterized as a policymaking official, was personally involved in the shooting at Coon's home. See Bennett v. City of Slidell, 735 F.2d 861 (5th Cir.1984) (en banc) (denying reh'g (with opinion)), cert. denied, --- U.S. ----, 105 S.Ct. 3476, 87 L.Ed.2d 612 (1985). County liability could therefore be found only if there was "[a] persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy...." Id., 735 F.2d at 862.
 
 
 11
 At the time of trial, Ledbetter had been sheriff for seven years. During his tenure there had been only three shooting incidents besides this one. Coon argues that his shooting was the product of Sheriff Ledbetter's "tacit encouragement," evidenced by the sheriff's statement that he would "rather be tried by twelve than carried by six" and that was how he wanted his men to be. Ledbetter's use of this time-worn aphorism is too slender a reed to support the conclusion that he encouraged his deputies to use excessive force. Perhaps the adage only reflects a harsh reality that policemen perceive in their lives: whatever his split second decision in a life threatening street confrontation, an officer will be second-guessed. More to our point, the statement does not necessarily advocate or excuse the use of excessive force. Sheriff Ledbetter denied that such a meaning was either intended or in context was so understood. This denial was not rebutted by contrary evidence, and it follows that Jackson County could not be held liable on the basis of the sheriff's statement.
 
 
 12
 Pointing to the recent decision in Grandstaff v. City of Borger, 767 F.2d 161 (5th Cir.1985), plaintiffs argue that Jackson County can be held liable because Sheriff Ledbetter ratified the deputies' conduct after the event. Grandstaff, however, does not stand for the broad proposition that if a policymaker defends his subordinates and if those subordinates are later found to have broken the law, then the illegal behavior can be assumed to have resulted from an official policy. Rather, Grandstaff affirmed a judgment against a Texas city on a highly peculiar set of facts: in response to a minor traffic violation, three patrol cars engaged in a high speed chase during which they fired wildly at the suspected misdemeanant; the object of this chase took refuge on an innocent person's ranch, where the entire night shift of the city police force converged and proceeded to direct hails of gunfire at anything that moved; although nobody except the police was ever shown to have fired a shot, the innocent rancher was killed when the police shot him in the back as he was emerging from his own vehicle; after this "incompetent and catastrophic performance," at 171, which involved a whole series of abusive acts, the officers' supervisors "denied their failures and concerned themselves only with unworthy, if not despicable, means to avoid legal liability," Id. at 166. The Grandstaff panel emphasized the extraordinary facts of the case, and its analysis can be applied only to equally extreme factual situations.
 
 
 13
 In the case at bar, only a small fraction of the County's 70-odd deputies was involved; they responded to gunfire that they could easily have believed was directed at them. Their return fire struck and wounded only the shotgun-wielding individual who had fired the initial shots. Sheriff Ledbetter defended his deputies afterward, but it is undisputed that in doing so he was accepting their version of what happened. Unlike almost any conceivable version of the Grandstaff episode, that version did not show that the deputies' actions were manifestly indefensible. Sheriff Ledbetter did not defend lawless conduct, and it is unreasonable to infer from his defense of his men a county policy approving reckless police behavior. Jackson County was properly dismissed as a defendant in this case.
 
 3
 
 14
 Sheriff Ledbetter, who did not participate in the shootout, argues that under Monell v. Department of Social Services, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978), he is not vicariously liable for the acts of his deputies. Coon replies that under Miss.Code Ann. Sec. 19-25-19 (1972), a sheriff is liable for his deputies' acts. Coon's argument incorrectly assumes that the more expansive Mississippi law overrides the distinctly restrained policy of Monell.
 
 
 15
 Constitutional torts find much of their sustenance in doctrines of tort law, but that draw has been a selective effort to give substantive content and remedial dimension to specific constitutional rights. As we explained in Baskin v. Parker, 602 F.2d 1205, 1208 (5th Cir.1979), Monell prohibits courts from allowing the vagaries of state law attribution rules to define the contours of constitutional claims. Our cases reject the application of vicarious liability to constitutional claims like this one. See Wanger v. Bonner, 621 F.2d 675, 679 (5th Cir.1980); Watson v. Interstate Fire & Cas. Co., 611 F.2d 120, 123 (5th Cir.1980). It follows that neither Sheriff Ledbetter nor his insurer, U.S.F. & G., can be held liable under Sec. 1983.
 
 
 16
 The district court, however, granted a directed verdict in favor of U.S.F. & G. as to all claims, including those based on state law. The articulated ground of this judgment was that the sheriff's bond on its face made the State of Mississippi the sole obligee. Our research indicates that Mississippi law, while scanty, allows citizens who have been wronged by a sheriff's acts to sue on these bonds. See, e.g., United States Fidelity & Guaranty Co. v. State ex rel. Stringfellow, 254 Miss. 812, 182 So.2d 919 (1966); State ex rel. Weems v. United States Fidelity & Guaranty Co., 128 So. 503 (Miss.1930). We have been cited to no cases, and our own research has disclosed none, that would preclude a judgment against U.S.F. & G. should Coon prevail against the sheriff on his state law claim. Accordingly, we must reverse the district court's directed verdict in favor of U.S.F. & G., and remand for reconsideration in light of the applicable Mississippi law.
 
 4
 
 17
 The deputies argue that the district court's charge denied their asserted right to a good faith defense; that it allowed the jury to find them liable for negligence alone; and that it failed to obtain separate verdicts as to each defendant. We are persuaded that the charge did improperly blend simple negligence and the claimed deprivation of constitutional right. We are also persuaded that the failure to obtain separate verdicts was error.
 
 
 18
 The court told the jury that "basically and essentially this is an action by these three plaintiffs against these officers for negligence." The court then gave the usual definition of negligence. At other places in the charge, the jury was told that it could find liability if excessive force amounting to gross negligence was used. Finally, the jurors were allowed to find liability if they found that two or more defendants maliciously conspired to cause Billy Dan Coon to be indicted. We have stated:
 
 
 19
 In determining whether the state officer has crossed the constitutional line that would make the physical abuse actionable under Section 1983, we must inquire into the amount of force used in relationship to the need presented, the extent of the injury inflicted and the motives of the state officer. If the state officer's action caused severe injuries, was grossly disproportionate to the need for action under the circumstances, and was inspired by malice rather than merely careless or unwise excess of zeal so that it amounted to an abuse of official power that shocks the conscience, it should be redressed under Section 1983.
 
 
 20
 Raley v. Fraser, 747 F.2d 287, 289 (5th Cir.1984) (quoting Shillingford v. Holmes, 634 F.2d 263, 265 (5th Cir.1981)); see also Williams v. Kelley, 624 F.2d 695, 697 (5th Cir.1980) (quoting a similar formulation from Johnson v. Glick, 481 F.2d 1028, 1033, (2d Cir.) (Friendly, J.)), cert. denied, 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973); Mills v. Smith, 656 F.2d 337, 339-40 (8th Cir.1981) (negligent shooting of escaped prisoner would not be constitutional violation); id., 656 F.2d at 340 n. 2 (discussing Parratt v. Taylor, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981)).
 
 
 21
 Had the jury's attention been confined to the question of excessive force, measured objectively, the proper charge might have been functionally indistinguishable from one using a gross negligence standard, and a confusion in terminology might have been harmless. That is, if the jury had been instructed that it could find defendants liable only if, under all the facts and circumstances of the case, the arresting officers were grossly negligent in using greater force than was necessary, we might well look past the label of negligence. Although excessive force under such an instruction would be expressed in terms of a reasonable police officer, it would, and critically we think, have focused on gross abuse of police power, the only cognizable constitutional deprivation alleged in this case. Cf. Monroe v. Pape, 365 U.S. 167, 172, 81 S.Ct. 473, 476, 5 L.Ed.2d 492 (1961); United States v. Classic, 313 U.S. 299, 326, 61 S.Ct. 1031, 1043, 85 L.Ed. 1368 (1941). But the charge did not do this. Instead, it allowed the jury to impose liability if the jurors believed that the officers were guilty of ordinary negligence in not identifying themselves by a display of flashing lights or otherwise and that this negligence was a proximate cause of the resulting injury, even though the jurors may also have believed that the officers were thereafter justified in returning Coon's gunfire. Indeed, Coon's lawyer forcefully argued such a negligence theory in his summation to the jury.
 
 
 22
 Under this scenario, the jury award would rest on the tort of negligence.[1] While the difference between ordinary tort and constitutional tort may be indistinct at their juncture points, the difference is clear at their poles. For example, it is plain that a person injured in an auto accident when a police officer negligently fails to yield the right-of-way has no claim for deprivation of constitutional right. It is equally plain, however, that a police officer using excessive force to make an arrest deprives a citizen of a constitutional right and may be liable under Sec. 1983. In both cases, the plaintiffs may have suffered substantially similar physical injuries, and in each case the policeman may have deviated from the norm of prudent conduct. Unlike the negligent driver, however, the arresting officer has behind him the power of the state, and his conduct recklessly abuses that power. On the facts of the case at bar, the jury could have found a form of gross negligence that would imply a constitutional violation or a form of ordinary negligence that would imply no such violation. Under the general charge employed in this case, we cannot know which kind of negligence the jury's verdict rested upon. Accordingly, we must reverse.
 
 
 23
 We need not, however, base our reversal solely on this relatively abstract and sometimes uncertain distinction between simple negligence and deprivation of constitutional right. The jury charge suffered another equally serious error. The jurors were told over objection that if they found that "any of the defendants acted negligently, and that such negligence, if any, was a proximate cause ... then you should find for the plaintiff." Apart from the blending of simple negligence and abuse of power, this instruction effectively implies that each deputy was liable for the negligent act of any other. This was reversible error. The acts of the deputies were not the same. The jury could have concluded that one or more of the deputies either was free of negligence or was not a proximate cause of the plaintiffs' injuries. We need not explore further the possibilities of prejudice inherent in the failure to obtain separate findings as to each defendant. It is obvious that Rule 49 interrogatories should be used on retrial of the claims of Racheal and Billy Dan Coon against the deputies.
 
 
 24
 Finally, because the issue may arise on retrial, we pause to comment on the deputies' suggestion that the trial court's charge "effectively prevent[ed] the jury from considering any good faith defense of the various Deputies." The doctrine of qualified, or "good faith," immunity shields a police officer from liability for civil damages when his conduct, though it may technically be illegal, does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); Trejo v. Perez, 693 F.2d 482, 487 n. 9 (5th Cir.1982). Use of excessive force in making an arrest violates clearly established rights, and the doctrine of qualified immunity therefore does not shield an officer who uses excessive force. As we discussed above, however, there is no constitutional violation without conduct itself inconsistent with good faith.[2] Thus the coincidence of the inquiries into whether there was excessive force and whether there was good faith only intensifies the need to make plain to the jury that ordinary negligence is not enough.
 
 
 25
 The jury must be told in some manner that the constitutionality of the deputies' conduct rests on: "... such factors as the need for the application of force, the relationship between the need and the amount of force that was used, the extent of injury inflicted, and whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." Williams v. Kelley, 624 F.2d 695, 697 (5th Cir.1980) (quoting Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir.) (Friendly, J.), cert. denied, 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973)).
 
 III
 
 26
 In sum, we affirm the district court's directed verdict in favor of Jackson County. We (1) reverse outright the judgment against Sheriff Ledbetter on the constitutional claims; (2) reverse outright the judgment in favor of Dana Coon on the constitutional claims; (3) reverse and remand for new trial of liability and damages the claims for deprivation of constitutional rights by Billy Dan and Racheal Coon against Deputies Gussberry, Cushman and Herrington; (4) reverse the judgment and remand for a new trial of liability and damages on the state claims against all defendants;[3] and (5) reverse the judgment in favor of United States Fidelity & Guaranty Co. and remand for reconsideration in light of the applicable state law. We do not reach other assigned error.
 
 
 27
 AFFIRMED in part, REVERSED in part, and REMANDED in part.
 
 
 
 [1]
 The complaint in this case did not state a pendent claim for ordinary negligence, perhaps because Mississippi does not provide for negligence actions against the government and because the plaintiffs did not have high hopes of collecting judgments against the individual officers
 
 
 [2]
 We do not here explore the question of Sec. 1983 good-faith immunity in cases in which a negligence-like standard is applied in determining whether a constitutional violation has occurred. Cf. Trejo v. Perez, 693 F.2d 482, 486-88 (5th Cir.1982). As the Supreme Court has said, "the question whether an allegation of simple negligence is sufficient to state a cause of action under Sec. 1983 is more elusive than it appears at first blush. It may well not be susceptible of a uniform answer across the entire spectrum of conceivable constitutional violations which might be the subject of a Sec. 1983 action." Baker v. McCollan, 443 U.S. 137, 139-40, 99 S.Ct. 2689, 2692, 61 L.Ed.2d 433 (1979) (quoted with approval in Parratt v. Taylor, 451 U.S. 527, 534, 101 S.Ct. 1908, 1912, 68 L.Ed.2d 420 (1981))
 
 
 [3]
 On remand the district court will not be foreclosed from considering how the doctrine of "pendent party" jurisdiction applies to Sheriff Ledbetter and United States Fidelity & Guaranty Co. See Aldinger v. Howard 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976)