Kevin Lee STEVENS Plaintiff-Appellee,

v.

Gerald CORBELL, et al.,
Defendants–Appellants.

No. 86–2609.

United States Court of Appeals,
Fifth Circuit.

Nov. 25, 1987.

Rehearing and Rehearing En Banc
Denied Jan. 22, 1988.

Gabriel G. Quintanilla, Asst. Atty. Gen., Jim Mattox, Atty. Gen., Austin, Tex., for defendants-appellants.

Curtis B. Stuckey, Timothy B. Garrigan, Nacogdoches, Tex., for plaintiff-appellee.

Before GARZA, WILLIAMS, and GARWOOD, Circuit Judges.

GARWOOD, Circuit Judge:

This appeal stems from section 1983 claims brought by plaintiff-appellee Kevin Lee Stevens against three police officers and a constable, in which Stevens alleged that the officers violated his constitutional rights by using excessive force in booking him into jail in Shelby County, Texas. Following an adverse jury verdict, the district court granted Stevens a new trial. Defendants-appellants Gerald Corbell, Hal Wyatt, and Jessie Wilburn (collectively, the police officers) brought this interlocutory appeal from the district court's new trial order on the ground that it deprived them of their right, under the doctrine of qualified immunity, not to go through a trial. We reject their arguments and, accordingly, affirm the district court's grant of a new trial.

**Facts and Proceedings Below**

Kevin Stevens spent the afternoon of March 4, 1984 drinking with some of his friends. At about 5:30 p.m., Stevens drove several friends to a nearby convenience store. In the parking lot of the convenience store, Stevens apparently hit a parked car owned by one of the girls riding with Stevens in his car. The girl whose car Stevens hit yelled at him, and Stevens threatened to strike her. An argument then ensued between Stevens and one of his male friends, and Stevens and the male friend began fighting in the parking lot.

Answering the convenience store manager's telephone call, Constable Johnny Williams arrived and arrested Stevens, who was twenty-one years old at the time, and two of his male friends. Williams handcuffed Stevens to one of the boys, and the other to himself. He ordered them into the police car and began driving to the Shelby County jail. En route, he radioed ahead for assistance, and was met at the jail by Officers Corbell, Wyatt, and Wilburn. As the young men entered the jail, they either tripped or were pushed, and fell to the ground.

What happened inside the jail is hotly disputed. According to Stevens, Officer Corbell slammed him against the wall. Corbell denies this. Stevens then punched Corbell in the face. Following this so-called "first incident," Stevens claims that he was unhandcuffed, taken into the kitchen area, and severely beaten by Corbell (the second incident). Stevens, allegedly

unconscious by now, says Corbell subsequently dragged him into the intoxilizer room and beat him further (the third incident). Under Stevens' version of the facts, each of the other officers witnessed at least one of these incidents, yet made no attempt to intervene on his behalf or otherwise to stop Corbell.

Corbell, on the other hand, claims that Stevens was violent and combative throughout the events in question, and that he used only the amount of force necessary to subdue Stevens. The other police officers concur that Corbell used a reasonable amount of force against Stevens.

Following these three incidents, Stevens was taken by ambulance to a hospital, where he remained for four days. His injuries included a broken eardrum, nose, and cheek bone, and several cuts and bruises.

On April 9, 1984, Stevens filed suit against the police officers in their individual and official capacities, alleging a claim under 42 U.S.C. § 1983 for deprivation of rights secured by the Eighth and Fourteenth Amendments to the United States Constitution, as well as a pendent state-law tort claim for assault and battery. The complaint averred that Officer Corbell used excessive force during each of the three incidents on March 4, 1984; that Officers Wyatt and Wilburn, and Constable Williams, acquiesced in and deliberately failed to prevent the "brutal beatings" by Officer Corbell; and that the actions and omissions of each of the defendants were "willful, wanton and reckless" and in "conscious disregard and reckless indifference to the constitutional ... rights" of Stevens. Stevens sought compensatory and punitive damages, and attorneys' fees. The officers answered by denying that they had deprived Stevens of any federal constitutional or state-law rights and by raising as an affirmative defense good faith immunity. Subsequently, following the death of defendant Williams, the district court dismissed Stevens' claims against him.

After a four-day trial that commenced on January 22, 1986, the district court instructed the jury, both orally and in writing, on Stevens' section 1983 claims and on the officers' defense of qualified immunity. The case was then submitted to the jury on special interrogatories, which asked with regard to each of the three incidents in question whether Corbell had used "unreasonable force" against Stevens. The jury answered "No" to each of these interrogatories. In compliance with the conditioning instructions on the verdict form, the jury did not answer the remaining interrogatories, which addressed Stevens' claims against the other officers and the amount of damages. The district court entered judgment in accordance with the jury's verdict, dismissing Stevens' suit with prejudice.

Stevens then timely moved for a new trial, claiming error in the court's instructions to the jury. The district court granted Stevens' motion. The officers then submitted a motion to vacate the order granting a new trial or, in the alternative, to amend the order to allow for immediate appeal pursuant to 28 U.S.C. § 1292(b) and for a stay of district court proceedings pending the appeal. The district court denied this motion. The officers next filed in the district court a notice of appeal to the Fifth Circuit, and filed in this Court an emergency motion for stay of the district court proceedings pending the appeal. See Fed.R.App.P. 4(a)(1), 8(a).

A motions panel of this Court granted the police officers' motion for stay pending appeal and, when Stevens subsequently moved for reconsideration of the order granting the stay, denied that motion.[1] The motions panel reasoned that the police officers' appeal challenging the district court's decision to grant a new trial in effect raised the issue of their entitlement to qualified immunity; and that since the Supreme Court in *Mitchell v. Forsyth*, 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985), had held that a court's denial of a claim of qualified immunity was an appeal-

---

**1.** The panel opinion noted that one of the judges would have denied the officers' request for the stay and would have granted Stevens' motion for reconsideration.

able final decision within the meaning of 28 U.S.C. § 1291, this Court had jurisdiction over the police officers' appeal. The appeal was then assigned to the present panel for a decision on its merits, following briefing and oral argument.

## Discussion

### Jurisdiction

■ An order granting a new trial is interlocutory, and is therefore not ordinarily immediately appealable. *Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 101 S.Ct. 188, 66 L.Ed.2d 193 (1980); *Dassinger v. South Central Bell Telephone Co.*, 537 F.2d 1345, 1346 (5th Cir.1976). Under the collateral order doctrine, however, an otherwise interlocutory order of the district court is appealable as a final decision under 28 U.S.C. § 1291 if it falls within "that small class [of cases] which finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 1225–26, 93 L.Ed. 1528 (1949).

The Supreme Court in *Mitchell v. Forsyth*, 472 U.S. 511, 105 S.Ct. 2806, 2817, 86 L.Ed.2d 411 (1985), held that a denial of a summary judgment motion brought on the basis of a qualified immunity defense, "to the extent that it turns on an issue of law," is an appealable final decision under the collateral order doctrine. According to *Mitchell*, immediate appealability was called for because the protection afforded by qualified immunity is not merely immunity from payment of damages, but also

freedom from the burdens of standing trial and of undergoing unnecessary discovery in cases in which liability is foreclosed by the immunity doctrine as a matter of law. *Id.* at 2815–16 (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 2737–38, 73 L.Ed.2d 396 (1982)). Since the entitlement includes immunity from suit in some cases, a court's wrongful denial of the defense could not in such cases be vindicated by appellate review after final judgment.

The police officers have argued, and the motions panel held, that the new trial order implicates the issue of their entitlement to qualified immunity.[2] We think, however, that the district court's basis for granting the new trial goes more to the substantive elements the plaintiff must prove in his section 1983 claim than to the issue of qualified immunity. None of the interrogatories submitted to the jury dealt with qualified immunity. Although one part of the court's jury charge did describe the qualified immunity defense, that instruction is not the one upon the basis of which a new trial was granted.

■ Nevertheless, despite our doubt about whether the district court's order actually turned on the issue of qualified immunity, since the motions panel has already ruled not to dismiss the appeal, we choose not to reconsider the panel's determination of our jurisdiction.[3] However, since our jurisdiction over this appeal is based on the collateral order doctrine, as made applicable by *Mitchell* to issues of law involving entitlement to qualified immunity, we will examine the district court's instructions for legal error only. *Cf. Schaper v. City of Huntsville*, 813 F.2d 709, 713 (5th Cir.1987). We do not consider it appropriate in this specialized kind of appeal

---

**2.** As mentioned above, the motions panel determined that the exception to the nonappealability rule for interlocutory orders created in *Mitchell* applied here. The panel therefore held that this Court had jurisdiction, pursuant to 28 U.S.C. § 1291 and *Mitchell*, over the officers' appeal from the new trial order.

**3.** We note, however, that a motions panel's provisional ruling on an issue of jurisdiction is normally not binding on the oral argument panel to whom the case falls for resolution of the

appeal on the merits. *EEOC v. Neches Butane Prods.*, 704 F.2d 144, 147 & n. 2 (5th Cir.1983). *See also, e.g., EEOC v. Southern Pacific Transp. Co.*, 799 F.2d 1076, 1079 (5th Cir.1986); *Fischer v. United States Dept. of Justice*, 759 F.2d 461, 463 (5th Cir.1985); United States Court of Appeals for the Fifth Circuit, *Court Policies*, No. 14(b) (1984). *But cf. DeMelo v. Toche Marine, Inc.*, 711 F.2d 1260, 1262–63 n. 2 (5th Cir.1983) (referring to general rule that holding in a prior appeal is law of the case).

to consider whether, in the overall factual context of this particular case, any error in those instructions was sufficiently prejudicial to warrant a new trial. *See generally* 11 C. Wright & A. Miller, *Federal Practice and Procedure* § 2803 (1973).

### On the Merits

The district court premised its grant of a new trial on its conclusion that the jury could have been misled to Stevens' prejudice by its charge. The instruction about which Stevens complained, and which the district court concluded was erroneous, stated:

"36. Section 39.02 of the Texas Penal Code sets out the circumstances under which state officials transgress their authority under state law.... It provides in part, as follows:

"(a) A public servant acting under color of his office or employment commits an offense if he:

"(1) intentionally subjects another to mistreatment ... that he *knows is unlawful;* or

"(2) intentionally denies or impedes another in the exercise or enjoyment of any right, privilege, ... or immunity, *knowing his conduct is unlawful.*

"(b) [A] public servant acts under color of his office or employment if he acts or purports to act in an official capacity or takes advantage of such actual or purported capacity." (Emphasis added.)

Significantly, the court further instructed that since this state law comported with the federal constitution, Stevens, to recover on his section 1983 claims, had to prove by a preponderance of the evidence that the officers had acted "beyond the limits of [their] authority under the state law."

According to the district court, the instruction wrongly required Stevens to prove that Corbell *intended* to subject him to mistreatment in order to prevail on the section 1983 claim. In the court's view, because the Supreme Court had recently reserved the question "whether something less than intentional conduct, such as recklessness or 'gross negligence,' is enough to trigger the protections of the Due Process Clause," *Whitley v. Albers,* 475 U.S. 312, 106 S.Ct. 1078, 1088, 89 L.Ed.2d 251 (1986) (quoting *Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 667 n. 3, 88 L.Ed.2d 662 (1986)), and because the Court had allowed recovery under a "deliberate indifference" standard in an Eighth Amendment, denial of medical treatment case, *see Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976), intentional infliction of harm was not the proper standard. The district court therefore concluded that its instruction, especially since it contained no definition of what constituted intent for these purposes, was sufficiently erroneous to warrant a new trial.

We concur that the instruction misstates the law, but we base our conclusion on a reason other than the one given by the district court. In determining whether injuries inflicted by police officers give rise to an actionable section 1983 claim, this Circuit follows the standard set forth in *Shillingford v. Holmes,* 634 F.2d 263, 265 (5th Cir. Unit A Jan. 1981). *Accord Lynch v. Cannatella,* 810 F.2d 1363 (5th Cir.1987); *Hendrix v. Matlock,* 782 F.2d 1273, 1274 (5th Cir.1986); *Coon v. Ledbetter,* 780 F.2d 1158, 1163 (5th Cir.1986); *see also Williams v. Kelley,* 624 F.2d 695, 697 (5th Cir.1980) (quoting a similar formulation from *Johnson v. Glick,* 481 F.2d 1028, 1033 (2d Cir.1973)), *cert. denied,* 414 U.S. 1033, 101 S.Ct. 3009, 38 L.Ed.2d 324 (1981).[4] As

---

4. In *Hendrix,* for example, we rejected the plaintiffs' challenge to a district court's instructions regarding their section 1983 and Fourteenth Amendment claim that the defendant police officers had used excessive force in attempting to arrest their son. The objected to instructions stated:

"With respect to the excessive force theory, you are instructed that in order for the plaintiffs to establish that the deputies ... crossed the constitutional lines that makes their shooting of Samuel Hendrix actionable under federal law, you must first find two things.

"First, that the deputies' actions were grossly disproportionate to the need for action under the circumstances, and second, that the deputies' actions were inspired by malice and not just a careless or unwise excess of zeal, so that their actions amounted to an abuse of official power that shocks the conscience." 782 F.2d at 1274.

recently reiterated by this Court, *Shillingford* mandates that

> "[i]n determining whether the state officer has crossed the constitutional line that would make the physical abuse actionable under Section 1983, we must inquire into the amount of force used in relationship to the need presented, the extent of the injury inflicted and the motives of the state officer. If the state officer's action caused severe injuries, was grossly disproportionate to the need for action under the circumstances, and was inspired by malice rather than merely careless or unwise excess of zeal so that it amounted to an abuse of official power that shocks the conscience, it should be redressed under Section 1983."
> *Coon,* 780 F.2d at 1163.

This standard is similar to the one stated last year by the Supreme Court in an Eighth Amendment excessive force case, where the Court stated that "whether the measure taken inflicted unnecessary and wanton pain and suffering ultimately turns on 'whether force was applied in a good faith effort to maintain or restore discipline or maliciously or sadistically for the very purpose of causing harm.'" *Whitley,* 106 S.Ct. at 1085 (quoting *Johnson,* 481 F.2d at 1033).

*Whitley* differs from the present case in that it involved a claimed infliction of cruel and unusual punishment in violation of the Eighth Amendment. Since that clause applies only after a person has been convicted of a crime, *id.* at 1084; *Thibodeaux v. Bordelon,* 740 F.2d 329, 333–34 (5th Cir. 1984), it cannot be the source of Stevens' constitutional rights. The *Whitley* standard therefore does not of its own force necessarily govern Stevens' claim, which is properly rooted in the due process clause of the Fourteenth Amendment. *See, e.g., Whitley,* 106 S.Ct. at 1088; *Shillingford,* 634 F.2d at 265.[5] However, the Supreme Court stated in *Whitley* that at least in the prison security context, the "Due Process Clause affords no greater protection than does the Cruel and Unusual Punishment Clause." *Id.* at 1088.

■ Consequently, although the district court correctly observed that *Daniels* reserved the general question whether "something less than intentional conduct" may in some contexts trigger the protections of the due process clause, 106 S.Ct. at 667 n. 3, neither *Whitley* nor *Daniels* indicates that a lesser standard should govern in a case, such as this, where the plaintiff has claimed that excessive force was used in booking him while properly in jail pursuant to a lawful arrest. Moreover, the Supreme Court has not yet affirmatively determined that anything less than essentially intentional or actually malicious conduct, which is basically what *Shillingford* requires, ever triggers Fourteenth Amendment substantive due process protections for purposes of a section 1983 action. We therefore disagree with the district court's suggestion that the Supreme Court's decisions in *Whitley* and *Daniels* changed this Circuit's standard for analyzing this kind of an excessive force, Fourteenth Amendment claim in a section 1983 action; neither the Supreme Court nor this Court has departed from the requirement that the constitutional line be drawn at action that was not only grossly disproportionate under the circumstances, but also was inspired by malice, so as to amount to an abuse of official power that shocks the conscience. *Hendrix,* 782 F.2d at 1275.

■ We nonetheless agree that the district court's instructions contain an erroneous statement of the law governing Stevens' claim. Paragraph 36 of the instructions required Stevens to prove not only that Corbell intended to use excessive force, but also that he did so knowing that it was *unlawful* for him to do so. That is

---

We held that these instructions were a proper statement of the law, and therefore rejected plaintiffs' claims of error and affirmed the judgment for the defendants.

5. In some cases use of excessive force may also violate the Fourth Amendment guarantee of "the right of ... people to be secure in their persons," as made applicable to the states by the Fourteenth Amendment. *See, e.g., Jamieson v. Shaw,* 772 F.2d 1205, 1210 (5th Cir.1985); *Shillingford,* 634 F.2d at 265.

not the law. In order to be liable, Corbell must have realized that he was using more force than he honestly believed was actually needed to subdue and book Stevens. *See, e.g., Whitley,* 106 S.Ct. at 1085; *Shillingford,* 634 F.2d at 265. But he need not have known that using greater than necessary force was unlawful. A plaintiff claiming that use of excessive force violated his federal constitutional rights does not have to prove, as an element of his case in chief, that the state officer actually knew that his actions were in *violation of the law.* It was therefore error for the district court to give an instruction that in essence required Stevens to prove that Corbell used excessive force "knowing his conduct [wa]s unlawful."

Furthermore, although in some cases a state official who did not know, and cannot reasonably be expected to have known, that his actions would violate the law may be entitled to the defense of qualified immunity, this is not such a case.[6] The defense of qualified, or "good faith," immunity shields a state official performing discretionary functions from liability in a section 1983 damages action when the officer's conduct, though perhaps later determined to have been illegal, does not violate a clearly established constitutional or statutory right of which a reasonable person would have then known. *Mitchell v.*

*Forsyth,* 472 U.S. 511, 105 S.Ct. 2806, 2815–16, 86 L.Ed.2d 411 (1985); *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). In such cases the officer can gain immunity by showing that since the legal right in question was not clearly established at the time of his actions, he could not reasonably be expected to have known that his conduct was unlawful. *See Tennessee v. Garner,* 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985); *Lynch,* 810 F.2d at 1374.

In this case, however, there is no real dispute about what the law authorized. The law is and was clear in allowing a police officer to use only the amount of force he honestly believes is needed. Since it is well-settled in this Circuit that knowing use of excessive force in booking an arrestee violates the arrestee's constitutional rights, the defense of qualified immunity is unavailable to a police officer who the plaintiff has alleged thus used excessive force. *Coon,* 780 F.2d at 1164.[7] Qualified immunity therefore does not shield the officers from liability under the facts of this case, and, consequently, the district court's grant of a new trial cannot be overturned on the ground that it subjects the officers to a trial that the doctrine of qualified immunity entitles them not to have to face.[8]

---

**6.** Of course, since qualified immunity is an affirmative defense, the plaintiff in a case such as this would not have the burden of proving, as a substantive element of a section 1983 claim of the present kind, that the defendant official knew or should have known of the unlawfulness of his conduct.

**7.** The present case may be distinguished from those where, in order to establish the constitutional invasion itself, it is not necessary that the governmental actor have had any particular state of mind or one of more culpability than mere negligence. *See Coon,* 780 F.2d at 1164 n. 2. *See also Anderson v. Creighton,* 107 S.Ct. 3034 (1987); *Malley v. Briggs,* 475 U.S. 335, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986). This case may also be distinguishable from those in which some preexisting statute (or other recognized expression of generally applicable law) purports to authorize the particular type of conduct complained of and the case turns on whether the statute (or other such rule) is unconstitutional in that respect. *Cf. Tennessee v. Garner,* 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985).

**8.** Due to the conditioning language in the special interrogatories, which instructed the jury not to answer the interrogatories pertaining to Officers Wyatt or Wilburn unless it found against Corbell respecting at least one of the three incidents, the jury did not decide whether Wyatt or Wilburn had violated Stevens' constitutional rights. Hence, to the extent the error in the court's instructions affected the jury's answers to the interrogatories about Corbell's liability, it also caused the jury not to answer the remaining interrogatories. The propriety of the district court's decision to grant Stevens a new trial against defendants Wyatt and Wilburn therefore turns directly on the correctness of its decision to grant the new trial against Corbell. Except as to the legal question we have addressed in this appeal, the order granting a new trial against each of the officers thus requires a review of the facts, which must await a final decision following the second trial. Accordingly, we do not disturb the district court's grant of a new trial against Officers Wyatt and Wilburn.

### Conclusion

We conclude that the district court's instructions were legally erroneous, and that its grant of a new trial to Stevens did not have the effect of depriving the police officers of a right, under the doctrine of qualified immunity, not to have to go through the burden of trial. Therefore, on the basis of our review of the instructions for legal error only, we affirm the district court's order granting Stevens a new trial.

AFFIRMED.