**Phillipe Dell FARGO,
Plaintiff–Appellant,**

v.

**CITY OF SAN JUAN BAUTISTA, et al.,
Defendants–Appellees.**

No. 87–2165.

United States Court of Appeals,
Ninth Circuit.

Submitted Feb. 8, 1988 *.

Decided Sept. 16, 1988.

Phillipe Dell Fargo, Represa, Cal., in pro per.

---

* The panel finds this case appropriate for submission without oral argument pursuant to Ninth Circuit Rule 34–4 and Fed.R.App.P. 34(a).

Allen F. Hunter, Gassett, Perry & Frank, San Jose, Cal., for defendants-appellees.

Before SKOPIL, REINHARDT and LEAVY, Circuit Judges.

REINHARDT, Circuit Judge:

Officer Richard Allerton of the City of San Juan Bautista Police Department shot Phillipe Fargo in the back while attempting to handcuff him. At the time Fargo was unarmed and lying on the ground motionless, on his stomach. Fargo sued Allerton under 42 U.S.C. § 1983, claiming a violation of his fourteenth amendment rights. He also sued the Police Chief, as well as the City of San Juan Bautista Police Department and the City of San Juan Bautista. The district court granted defendants' motion for summary judgment on all claims. We reverse the district court's grant of summary judgment on the fourteenth amendment claim against Allerton, and affirm summary judgment on the rest.

## I. FACTS AND PROCEEDINGS BELOW

When Officer Allerton responded to the scene of a shooting, witnesses described the suspects and the vehicle in which they had fled. After the officer left, he was advised, by radio, of a nearby traffic accident involving a vehicle that fit the description. Defendant Hurlbut, the Chief of the San Juan Bautista Police Department, gave Allerton permission to go to the accident site. When he arrived, a witness to the accident pointed out Fargo as the driver of the vehicle involved. The vehicle resembled the one reportedly used by the suspects.

Allerton approached Fargo with his gun drawn and ordered him to lie on his stomach. Fargo complied and Allerton did a pat-down search, as Fargo lay still. Allerton then placed Fargo's left hand in handcuffs and moved it to the middle of Fargo's back.

He then took Fargo's right hand in his own, in which he was also holding his gun, and moved it toward the handcuffed hand. As Allerton started to handcuff Fargo's right hand, the gun discharged. The bullet entered Fargo's right shoulder.

At his deposition, Officer Allerton testified that the proper method of handcuffing in this situation was to put his gun back in his holster once the handcuffs were placed on the suspect's left hand. He admitted that he acted contrary to the way that he had been trained. Allerton also contended that when he was putting on the handcuffs his mind went blank, and he forgot everything that he had learned at the training academy. According to Allerton, he did not even hear his gun discharge; only when he stood Fargo up and pulled his shirt down did he realize that he had shot him.

Fargo claims that Allerton's conduct violated his fourteenth amendment rights. He argues on this appeal that Allerton's conduct was intentional or, in the alternative, reckless or grossly negligent, and not simply negligent, and so constitutes a deprivation of his liberty interest guaranteed by the due process clause. Fargo is also suing the San Juan Bautista Police Department and its Chief, as well as the City of San Juan Bautista, for not adequately training police officers in violation of the fourteenth amendment. He seeks monetary damages pursuant to section 1983.

The district court granted summary judgment in favor of all defendants. The order did not explain the basis of the court's ruling. It stated only that there were no genuine issues of material fact for trial. Fargo appeals.

## II. DUE PROCESS CLAIM AGAINST ALLERTON

Defendants argue that the shooting was accidental and not intentional, that Allerton's conduct constituted at the most mere negligence, and that Fargo has raised no genuine issue of material fact. Defendants rely on *Daniels v. Williams*, 474 U.S.

327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986), in which the Supreme Court concluded that the due process clause is not implicated by a state official's negligent act that causes unintended loss of, or injury to, life, liberty or property.

*Daniels* involved a prison inmate who brought a section 1983 action alleging that he was injured when he slipped on a pillow that was negligently left on a stairway by a prison official. The Court reasoned that a mere lack of due care "suggests no more than a failure to measure up to the conduct of a reasonable person," *id.* 474 U.S. at 332, 106 S.Ct. at 665, and that to hold that an injury caused by such conduct constitutes a due process deprivation would "trivialize" that clause, a clause "intended to secure the individual from the arbitrary exercise of the powers of government." *Id.* at 331, 106 S.Ct. at 665 (inner quotations omitted). However, the Court expressly left open the question "whether something less than intentional conduct, such as recklessness or 'gross negligence,' is enough to trigger the protections of the Due Process Clause." *Id.* at 334 n. 3, 106 S.Ct. at 667 n. 3.[1]

In the companion case to *Daniels, Davidson v. Cannon*, 474 U.S. 344, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986), three justices concluded that reckless conduct implicates the due process clause. Justice Brennan stated that "official conduct which causes personal injury due to recklessness or deliberate indifference, does deprive the victim of liberty within the meaning of the Fourteenth Amendment." *Id.* 474 U.S. at 349, 106 S.Ct. at 671 (Brennan, J., dissenting).

Justice Blackmun, joined by Justice Marshall, first stated that negligent conduct that contains some element of abuse of government power constitutes a deprivation of a liberty interest under the due process clause. *Id.* at 353, 106 S.Ct. at 673 (Blackmun, J., dissenting.) He then added, "[e]ven if negligence is deemed categorically insufficient to cause a deprivation under the Fourteenth Amendment, recklessness must be sufficient." *Id.* at 358, 106 S.Ct. at 675.

The majority in *Davidson* did not address the arguments of the dissenting justices. It found that the official conduct constituted mere negligence, and so did not reach the question whether recklessness or gross negligence could constitute a deprivation of a liberty interest under the due process clause. *Id.* at 348, 106 S.Ct. at 670. We, however, considered the issue and resolved it in the affirmative in *Wood v. Ostrander*, 851 F.2d 1212 (9th Cir.1988).

In *Wood*, as in the case before us, defendant police officers claimed that their alleged conduct was at most negligent and thus did not constitute a violation of the due process clause under *Daniels*. The district court granted defendants' motion for summary judgment.[2] We held that because the police conduct at issue may have constituted "more than mere negligence", the due process claim was not barred by *Daniels*. *Id.* at 1214–15. Under *Wood*, grossly negligent or reckless official conduct that infringes upon an interest protected by the due process clause is actionable under section 1983. *Id.* at 1214–15.[3]

---

1. The Court recently granted *certiorari* in a case that raises the question whether "reckless, willful and wanton, or grossly negligent misconduct of public officials [is] enough to trigger protections of Due Process Clause." *Deshaney v. Winnebago*, 812 F.2d 298 (7th Cir.1987), *cert. granted,* — U.S. ——, 108 S.Ct. 1218, 99 L.Ed.2d 419 (1988). In *DeShaney*, the Seventh Circuit assumed without deciding that the conduct at issue there was "a sufficiently aggravated form of negligence to escape the bar of *Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 667, 88 L.Ed.2d 662 (1986) and *Davidson v. Cannon,* 474 U.S. 344, 106 S.Ct. 668, 670, 88 L.Ed.2d 677 (1986)...." *Id.* 812 F.2d at 302. We note that *DeShaney* involves a failure to act rather than affirmative conduct.

2. The district court denied one of the defendants' summary judgment motions in which the defendants sought to characterize their actions as merely negligent. The court then granted a second summary judgment motion on a theory of qualified immunity. We reviewed the grant of summary judgment de novo.

3. Prior to *Wood*, we had held that a policy of gross negligence in training or supervision gives rise to section 1983 liability. *See Bergquist v. County of Cochise,* 806 F.2d 1364, 1370 (9th Cir.1986). *Wood* is consistent with the decisions of a majority of courts of appeals that have addressed this issue. These courts have concluded that conduct that is more than negli-

Accordingly, if Allerton's conduct constituted gross negligence or recklessness, as opposed to mere negligence, then it constitutes a deprivation of a liberty interest—i.e., the right to be free from excessive force [4]—under the due process clause.

## III. TRIABLE ISSUES OF FACT

We must next decide if there exist any genuine issues of material fact as to whether Allerton's conduct constituted more than mere negligence. When reasonable persons may disagree as to whether particular conduct constitutes negligence, gross negligence or recklessness, the question is one of fact to be decided by a jury.[5]

Admittedly, terms such as negligence, gross negligence and recklessness are at best inexact. As to the difference between negligence and gross negligence, we note that negligence suggests "no more than a failure to measure up to the conduct of a reasonable person," *Daniels v. Williams,* 474 U.S. at 332, 106 S.Ct. 665, while gross negligence generally signifies "more than ordinary inadvertence or inattention, but less perhaps than conscious indifference to the consequences." W. Keeton, D. Dobbs, R. Keeton & D. Owen, *Prosser & Keeton*

---

gent but less than intentional is sufficient to trigger the protections of the due process clause. *See, e.g., Harris v. Maynard,* 843 F.2d 414, 416 (10th Cir.1988) (wanton or obdurate disregard or deliberate indifference sufficient); *Morales v. New York State Dept. of Corrections,* 842 F.2d 27, 30 (2d Cir.1988) (deliberate indifference sufficient); *Colburn v. Upper Darby Township,* 838 F.2d 663, 669 (3d Cir.1988) (reckless indifference sufficient); *Taylor v. Ledbetter,* 818 F.2d 791, 793 (11th Cir.1987) (en banc) (gross negligence or deliberate indifference sufficient); *Lopez v. Houston Indep. School Dist.,* 817 F.2d 351, 355–56 (5th Cir.1987) (callous indifference sufficient); *Nishiyama v. Dickson County, Tenn.,* 814 F.2d 277, 281–83 (6th Cir.1987) (en banc) (gross negligence and reckless indifference sufficient); *DeShaney v. Winnebago County Dept. of Social Servs.,* 812 F.2d at 302 (aggravated negligence sufficient), *cert. granted,* —— U.S. ——, 108 S.Ct. 1218, 99 L.Ed.2d 419 (1988). *But see Stevens v. Corbell,* 832 F.2d 884 (5th Cir.1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 2018, 100 L.Ed.2d 604 (1988), where the Fifth Circuit seems to have established a more rigorous standard. There, the court held that official misconduct must be "'not only grossly disproportionate under the circumstances, but also ... inspired by malice, so as to amount to an abuse of official power that shocks the conscience'". *Id.* at 889 (quoting *Coon v. Ledbetter,* 780 F.2d 1158, 1163 (5th Cir.1986)). However, *Stevens* may be distinguishable from the instant case because that case involved prison security, an area where the Supreme Court has found that the "'Due Process Clause affords no greater protection than does the Cruel and Unusual Punishment Clause.'" *Stevens,* 832 F.2d at 889 (quoting *Whitley v. Albers,* 475 U.S. 312, 106 S.Ct. 1088, 89 L.Ed.2d 251 (1986)).

The Eighth Circuit has held in a case not involving prison security that an allegation of grossly negligent conduct does not state a claim under section 1983. *See Myers v. Morris,* 810 F.2d 1437, 1468 (8th Cir.), *cert. denied,* —— U.S. ——, 108 S.Ct. 97, 98 L.Ed.2d 58 (1987). However, the court in *Myers* seems to have misread

*Daniels* and *Davidson* as holding that grossly negligent conduct is insufficient to support a claim under section 1983. The *Myers* court simply stated that since negligence is insufficient, grossly negligent conduct is also insufficient. The court wholly ignored the Supreme Court's express reservation of the issue in *Daniels, see* 474 U.S. at 334 n. 3, 106 S.Ct. at 667 n. 3, and the dissents of Justices Brennan and Blackmun in *Davidson. See* 474 U.S. at 349–58, 106 S.Ct. at 671–76. In *Archie v. City of Racine,* 847 F.2d 1211, 1219 (7th Cir.1988) (en banc), the Seventh Circuit also held that gross negligence is insufficient under section 1983. *Archie* may be distinguished from the instant case because it involved a failure to act, rather than affirmative official misconduct. *See also Washington v. Dist. of Columbia,* 802 F.2d 1478, 1481 (D.C.Cir. 1986) (reckless failure to act insufficient to create section 1983 liability).

**4.** *See, e.g., Fernandez v. Leonard,* 784 F.2d 1209, 1214–15 (1st Cir.1986) (holding that such a right was "clearly established" for purposes of determining existence of qualified immunity under section 1983) (citations omitted); *Bauer v. Norris,* 713 F.2d 408, 411 (8th Cir.1983) (citing *Herrera v. Valentine,* 653 F.2d 1220, 1229 (8th Cir. 1981) and *Putman v. Gerloff,* 639 F.2d 415, 420 (8th Cir.1981)).

**5.** *See, e.g., Grand Trunk Ry. Co. v. Ives,* 144 U.S. 408, 417, 12 S.Ct. 679, 682, 36 L.Ed. 485 (1892); *Rinker v. County of Napa,* 831 F.2d 829, 832 (9th Cir.1987) (remand so jury can determine if conduct was more than merely negligent under section 1983); *Sims Crane Serv., Inc. v. Ideal Steel Products, Inc.,* 750 F.2d 884, 887 (11th Cir.1985) (applying Georgia law); *Hughes v. Blankenship,* 672 F.2d 403, 406 (4th Cir.1982); *McTavish v. Chesapeake and Ohio R.R. Co.,* 485 F.2d 510, 512 (6th Cir.1973) (applying Kentucky law); *Steel v. Downs,* 438 F.2d 310, 313 (8th Cir.1971) (applying North Dakota law); 3 S. Speiser, C. Krause & A. Gans, *The American Law of Torts* § 10:1, at 359 (1986).

*On the Law of Torts* § 34, at 212 (5th ed. 1984) (hereinafter "Prosser & Keeton") (footnotes omitted). Gross negligence describes "a greater want of care" than is implied by ordinary negligence, *Milwaukee & St. Paul Ry. Co. v. Arms*, 91 U.S. 489, 495, 23 L.Ed. 374 (1876), and includes conduct evidencing "the want of even scant care or an extreme departure from the ordinary standard of conduct." *Van Meter v. Bent Constr. Co.*, 46 Cal.2d 588, 594, 297 P.2d 644 (1956); *see also Wager v. Pro*, 603 F.2d 1005, 1010 (D.C.Cir.1979).

As to whether a jury could conclude that Allerton's conduct constitutes gross negligence, we observe that there is no indication that Fargo, while lying on the ground on his stomach with his hands at his side, did anything even remotely threatening to Allerton or anyone else. Once Allerton was atop Fargo, Fargo did not physically or verbally resist any of Allerton's actions. Allerton patted him down and determined that he was unarmed. Nevertheless, after handcuffing Fargo's left hand and moving it to the middle of his back, Allerton took Fargo's right hand in the same hand in which he held a gun and, while moving that right hand to the center of Fargo's back, pointed his gun at his head and then his shoulder. That conduct proximately caused the injury.

■ The question, ultimately, is whether Allerton's conduct constituted a greater want of care than ordinary negligence. Certainly, the fact that Allerton violated police procedures when handcuffing Fargo is relevant in determining the existence of gross negligence. The departmental procedures were intended to avert precisely the type of incident that occurred here.[6] Undoubtedly, handcuffing is a difficult exercise, often requiring some use of force under dangerous circumstances. Nevertheless, the department itself recognized the serious risk inherent in a police officer's holding a gun in his hand when attempting to handcuff a suspect's free hand.

We cannot conclude as a matter of law that Allerton's conduct, contrary as it was to proper police procedures, constituted mere inadvertence, and not a greater want of care. While Allerton claims that his mind went blank and that the shooting was accidental, such facts be they true or false are not relevant when determining the degree of negligence. State of mind is not at issue where either negligence or gross negligence are alleged, *see, e.g., Al G. Barnes Amusement Co. v. Olvera*, 154 F.2d 497, 498 (9th Cir.1946), although the contrary may be true where the claim involves recklessness. Recklessness is sometimes distinguished from negligence on the ground that it has a state of mind component.[7] *See, e.g., Doe v. New York City Dept. of Social Servs.*, 649 F.2d 134, 143 (2d Cir. 1981). In short, the terms "negligence" and "gross negligence" refer to and categorize the actor's conduct rather than his or her state of mind. Thus, what is relevant here is the actual conduct and the dangers associated with it, not whether Allerton's mind went blank.

---

**6.** The Supreme Court has stated that gross negligence also applies to "neglect of duties imposed for the protection of life or property...." *Smith v. Wade*, 461 U.S. 30, 44, 103 S.Ct. 1625, 1634, 75 L.Ed.2d 632 (1983) (quoting *Missouri Pacific R. Co. v. Humes*, 115 U.S. 512, 521, 6 S.Ct. 110, 113, 29 L.Ed. 463 (1885)).

**7.** We express no view as to whether an innocent state of mind can afford a defense to a charge of recklessness, or whether recklessness may be presumed conclusively from conduct. Recklessness or deliberate indifference generally refers to conduct that involves a "conscious disregard" of public safety. *See, e.g., Grimshaw v. Ford Motor Co.*, 119 Cal.App.3d 757, 174 Cal.Rptr. 348

(4th Dist.1981); *Bernesak v. Catholic Bishop of Chicago*, 87 Ill.App.3d 681, 42 Ill.Dec. 672, 676, 409 N.E.2d 287, 291 (1980). *See generally Smith v. Wade*, 461 U.S. 30, 34–51, 103 S.Ct. 1625, 1628–38, 75 L.Ed.2d 632 (1983). However, according to Prosser & Keeton, recklessness can be inferred from the facts and circumstances. Prosser & Keeton, *supra*, § 34, at 213. *See also Davidson v. Cannon*, 106 S.Ct. at 675 (Blackmun, J., dissenting) (where state officials have notice of the possibility of harm, "negligence can rise to the level of deliberate indifference to or reckless disregard for" the victim) (citations omitted).

In light of the above, we conclude that there exists a triable issue as to whether Allerton's conduct can properly be characterized as grossly negligent.[8] Accordingly, we need not decide whether there exists a triable issue as to whether his conduct might also be reckless. Summary judgment as to Fargo's fourteenth amendment claim against Allerton was inappropriate.[9]

## IV. CLAIMS AGAINST OTHER DEFENDANTS

Fargo claims in this appeal that Police Chief Hurlbut and the San Juan Bautista Police Department, as well as the City of San Juan Bautista, also violated his due process rights. He charges that they failed to provide adequate training regarding the lawful use of a revolver, and that this constituted deliberate indifference to the safety of the citizens of San Juan Bautista.

In *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 105 S.Ct. 2427, 2436, 85 L.Ed.2d 791 (1985), the Supreme Court held that it was reversible error to allow a jury to infer from a single use of excessive force by an officer that it was attributable to inadequate training amounting to gross negligence on the part of the officials in charge: "Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell v. Dept. of Social Servs. of The City of New York*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker."[10] Fargo has offered no evidence to support his theory that there exists a "policy" of inadequately training police officers. Absent more than proof of the shooting itself, Fargo's claims against these defendants must fail. Summary judgment as to these claims was properly granted by the district court.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

---

**8.** The concept of varying degrees of negligence has been criticized and even abandoned in some jurisdictions, where gross negligence has merged into what has traditionally constituted recklessness. *See, e.g.,* Restatement (Second) of Torts § 500 (1965); Prosser & Keeton, *supra,* § 34, at 214; *Denham v. United States,* 834 F.2d 518, 521 (5th Cir.1987) (applying Texas law, and labelling as grossly negligent conduct that has traditionally constituted recklessness). However, the Supreme Court continues to use the traditional labels, *see, e.g., Daniels,* 106 S.Ct. at 667 n. 3, as do other circuit courts. *See supra* note 2. Neither party here has suggested that we depart from that practice.

**9.** In his complaint, Fargo claimed that Allerton also deprived him of his rights under the fifth and eighth amendments. He does not raise these claims on appeal. However, he argues for the first time on appeal that the use of excessive force in his arrest deprived him of his fourth amendment rights. Issues that are not raised below should not ordinarily be considered on appeal. *Grauvogel v. Commissioner,* 768 F.2d 1087, 1090 (9th Cir.1985). We have dispensed with the waiver rule when the " 'question is a purely legal one that is both central to the case and important to the public.' " *Abex Corp. v. Ski's Enter., Inc.,* 748 F.2d 513, 516 (9th Cir.1984) (quoting *In re Sells,* 719 F.2d 985, 990 (9th Cir.1983)). As his fourth amendment claim is not "purely legal", we choose not to exercise our discretion and do not consider this claim further.

**10.** Although only a plurality of the Supreme Court joined this opinion in *Tuttle,* Justice Brennan's partial concurrence, joined by Justices Marshall and Blackmun, also supported the view that "the scope of § 1983 liability does not permit such liability to be imposed merely on evidence of the wrongful actions of a single city employee not authorized to make city policy." 105 S.Ct. at 2441 (Brennan, J., concurring in part and concurring in the judgment).