**Eloy Pedro GARCIA, Plaintiff-Appellant,**

v.

**MURPHY PACIFIC MARINE SALVAG-ING COMPANY, Defendant-Appellee.**

No. 72-3516

Summary Calendar.*

United States Court of Appeals, Fifth Circuit.

April 9, 1973.

---

* Rule 18, 5 Cir.; see Isbell Enterprises, Inc., v. Citizens Casualty Company of New York et al., 5 Cir. 1970, 431 F.2d 409, Part I.

Bruce C. Waltzer, George F. Riess, New Orleans, La., for plaintiff-appellant.

L. J. Lautenschlaeger, Jr., New Orleans, La., for defendant-appellee.

Before JOHN R. BROWN, Chief Judge, and DYER and SIMPSON, Circuit Judges.

DYER, Circuit Judge.

Garcia, a crew member of the M/V Cable, sued the owner, Murphy Pacific, for personal injury damages under the Jones Act, 46 U.S.C.A. § 688, and under the Doctrine of Seaworthiness of the general maritime law. The jury returned a verdict for Murphy Pacific. The district court denied Garcia's motion for new trial and judgment N.O.V. We affirm.

For about a week Garcia had been assisting Fuquay, another crew member, in splicing cable, an ordinary function

aboard the vessel while it was in port. The splicing was accomplished by cleaning the ends of the cable with diesel oil and a brush to remove the protective grease coating. Some of the oil and grease necessarily fell to and accumulated on the steel deck. To prevent the crew members engaged in the splicing operation from slipping on the deck, canvas, burlap bags, and sawdust were spread over the area.

At the time of the accident Fuquay was handling the Marlin spike and Garcia was pulling the strands of wire through the splice. Garcia's feet suddenly slipped out from under him, and in turning to the right in order to catch himself with his hands and arms while falling, he experienced pain in his lower back.

Garcia specifies two errors on appeal: the jury was manifestly in error in its failure to find that the Cable was unseaworthy and its crew negligent; and Garcia was denied his day in court, as the result of the inattentiveness or dozing of one of the members of the jury.

Garcia argues that the jury must not have understood the rather complex principles involved in a determination of liability under the general maritime law and under the Jones Act and that it was manifestly in error in incorrectly applying the legal principles involved. We disagree.

A careful review of the record convinces us that the issues tried were properly submitted to the jury and that its findings should stand. There was evidence to show that oil was on the deck; that safety measures were taken by spreading burlap sacks, canvas, and sawdust on the decks; that the cleaning and splicing was a normal function when the vessel was in port; that diesel oil is customarily used in connection with the splicing; and that there was nothing unusual in the way in which the operation was conducted. There was also evidence with respect to the experience of Garcia in connection with the splicing operation and the supervision, or lack of it, of Garcia.

In Lieberman v. Matson Navigation Company, 9 Cir. 1962, 300 F.2d 661, the court succinctly stated the principles here involved saying:

While it is true that the requirement to furnish a seaman a seaworthy vessel is absolute, it is untrue that this duty is limitless. "The standard is not perfection, but reasonable fitness." Mitchell v. Trawler Racer, Inc., 1960, 362 U.S. 539, 550, 80 S.Ct. 926, 933, 4 L.Ed.2d 941. The owner is not an insurer. Neterer v. United States, D.C.Md.1960, 183 F.Supp. 893.

"In other words, a seaman is not absolutely entitled to a deck that is not slippery. He is absolutely entitled to a deck that is not unreasonably slippery." Colon v. Trinidad Corp., D.C.N.Y.1960, 188 F. Supp. 97 at 100.

"The temporary presence of water upon the deck does not constitute unseaworthiness—to hold otherwise would make the shipowner an insurer." Garrison v. United States, N. D.Cal.1954, 121 F.Supp. 617.

Whether unseaworthiness or negligence are a proximate cause of the accident are questions of fact. Borgen v. Richfield Oil Corp., 9 Cir. 1958, 257 F.2d 505. The burden of proving either is on appellant. Selby v. United States, 2 Cir. 1959, 264 F.2d 632; Lipscomb v. Groves, 3 Cir. 1951, 187 F.2d 40.

From the evidence presented, the jury could have found that the Cable's owner had acted as a reasonably prudent person would have under the circumstances, hence there was no negligence; and that there was no unseaworthiness because the Cable was reasonably suited for its intended purpose and the work area was reasonably safe. On the other hand, the jury could have determined that there was negligence in the way the work was performed, or that because of the oil the area was unsafe and thus the vessel was unseaworthy. Under these circumstances we are not at liberty to redetermine facts found by the jury.

Under the rule of Lavender v. Kurn, 1946, 327 U.S. 645, 653, 66 S.Ct. 740, 744, 90 L.Ed. 916,

> whenever facts are in dispute or the evidence is such that fair-minded men may draw different inferences, a measure of speculation and conjecture is required on the part of those whose duty it is to settle the dispute by choosing what seems to them to be the most reasonable inference. Only when there is a complete absence of probative facts to support the conclusion reached does a reversible error appear.

Finally, we are unpersuaded that Rogers v. United States, 5 Cir. 1972, 452 F.2d 1149, upon which Garcia heavily relies, dictates a different result. In *Rogers* the plaintiff was required to stand and work in oil and water in the bilge for several hours and subsequently slipped and was injured. Nothing had been done to avoid or minimize the danger of slipping, except an occasional unsuccessful attempt to pump the bilges. In the case *sub judice,* however, it was *necessary* to utilize diesel oil in the splicing operation with its consequent drippings but canvas, burlap, and sawdust were used for the very purpose of avoiding or minimizing the danger of slipping.

■ While we might agree with Garcia's contentions had the question of fact been left to us, we can no more redetermine facts found by the jury than the district court can predetermine them. "For the Seventh Amendment says that 'no fact tried by a jury, shall be otherwise reexamined in any Court of the United States, than according to the rules of the common law.'" Atlantic & Gulf Stevedores, Inc. v. Ellerman Lines, Ltd., 1962, 369 U.S. 355, 359, 82 S.Ct. 780, 783, 7 L.Ed.2d 798, Aguirre v. Citizens Casualty Company of New York, 5 Cir. 1971, 441 F.2d 141, cert. denied, 404 U.S. 829, 92 S.Ct. 65, 30 L.Ed.2d 58.

By post trial motion for a new trial Garcia contended that he was denied his day in court because one of the jurors was allegedly inattentive or periodically dozing during the trial. The district court denied the motion and we think its ruling was proper.

It appears that the juror was curled up in her chair from time to time and kept her eyes closed frequently during the trial. The trial judge noticed this but also noted that the juror gave evidence that she was listening. There was no evidence offered that the juror was in fact asleep or inattentive.[1]

■ Because the context in which alleged juror misconduct arises is different in every case, whether a new trial should be granted must be decided on an ad hoc basis. In this case we cannot say that the evidence supported a finding of juror misconduct.[2]

The judgment of the district court is Affirmed.

---

1. The trial judge found:

   I am not satisfied that (she) was ever asleep at any time during the trial.

   I am not satisfied in this case that the interest of justice would be served by my granting a new trial on the hypothesis that this juror was inattentive.

2. No objection was made by Garcia's counsel during the trial and no affidavits were submitted by either Garcia or his counsel in support of the motion for new trial because they were unaware of the situation. Of course, a party, with knowledge of a juror's misconduct, must make a timely objection and is not permitted to take his chances on a favorable verdict and if unfavorable get a second bite of the apple.