893 F.2d 796
 Edwin Bradley HAY, Jr., Suing by Edwin Bradley Hay, Sr., His
Father and Next Friend, Plaintiff-Appellee, Cross-Appellant,
v.
The CITY OF IRVING, TEXAS, Defendants,
and
Officer Kristee Bass Orr, and Officer Albert Peck,
Defendants-Appellants, Cross-Appellees.
 No. 87-1022.
 United States Court of Appeals,
Fifth Circuit.
 Feb. 8, 1990.
 
 G. Luke Ashley, Terry L. Jacobson, Thompson & Knight, Dallas, Tex., for defendants-appellants, cross-appellees.
 Douglas R. Larson, Mesquite, Tex., for plaintiff-appellee, cross-appellant.
 Appeals from the United States District Court for the Northern District of Texas.
 Before WISDOM, JOHNSON, and HIGGINBOTHAM, Circuit Judges.
 PER CURIAM:
 
 
 1
 * In this civil rights suit against arresting officers and the City of Irving, Texas, Edwin Hay, Jr., through his father, claims damages for excessive force and conspiracy to violate his constitutional rights under 42 U.S.C. Secs. 1983, 1985, 1986, and 1988. Hay is mentally retarded and was nineteen years old when arrested. In addition to the City, he sued Officers Kristee Bass Orr, Gary Griffin, Tony Griggs, and Sergeant Albert Peck. A jury in Dallas, Texas returned a verdict only against Officer Orr and Sergeant Peck. It found that Orr and Peck used excessive force in arresting Hay and conspired to deprive him of his constitutional rights, awarding damages totaling $1400.00 ($1000.00 against Orr and $400.00 against Peck). We reject defendants' contention that the jury findings are not supported by the evidence and that they were prejudiced by a postjudgment change in the law lessening the proof required of a plaintiff in excessive force cases. We are persuaded, however, that the district court erred in submitting Hay's conspiracy claim to the jury and in including in the judgment a found value of the constitutional deprivation. We affirm, except that we modify the judgment to eliminate the erroneous constitutional Deprivation award, $325.00 ($250.00 against Orr and $75.00 against Peck), concluding that submitting the conspiracy claim to the jury was here harmless.
 
 II
 
 2
 Griffin, George, and Orr responded separately to a burglary alarm at an elementary school on May 15, 1983. They saw Hay walking away from the area, and Griffin stopped to question him. Meanwhile, Orr and Griggs inspected the school and noticed a broken window.
 
 
 3
 While he was talking to Hay, Griffin noticed blood on Hay's left hand, and he gave him a piece of gauze to stop the bleeding. Griggs and Orr rejoined Griffin and Hay. The officers realized that Hay had some type of unidentified problem. They gave Hay the standard Miranda warning and questioned him. Hay admitted that he broke the window to get money to play video games, a favorite hobby.
 
 
 4
 Sergeant Peck arrived at the scene and the officers briefed him on the situation. He ordered them to transport Hay to jail, and then he returned to his car.
 
 
 5
 Orr noticed that Hay was rubbing his cut with the gauze and that the cut was starting to reopen. She twice asked Hay to hand her the gauze, and when he did not respond, she reached for it. Hay suddenly drew back his right hand. Griggs was standing behind Hay, and he was almost hit by Hay's right hand. He grabbed Hay, and both fell to the ground. What followed was an effort to restrain Hay by Griggs, Griffin, and Orr. Griffin tried to sit on Hay's back and Orr tried to use her night stick to pry Hay's hands out from underneath his stomach in order to handcuff him. When this failed, she reached her left hand around Hay to apply a choke-hold or carotid restraint. Hay then bit Orr's arm, and, in response, Orr struck Hay on the back of the head two or three times with her night stick.
 
 
 6
 Upon seeing the scuffle, Sergeant Peck returned to the scene. From behind, he applied a carotid restraint to Hay, who continued to kick at the officers. After one of the kicks nearly hit Orr, she struck Hay across the leg with her night stick. Seconds later, the carotid restraint was secured, and the officers handcuffed and transported Hay to jail.
 
 
 7
 The jury found that Orr and Peck used excessive force in effecting Hay's arrest and that Orr and Peck conspired to deprive Hay of his right not to be subjected to excessive force. The jury awarded Hay a total of $650.00 in compensatory damages against Orr and Peck, $325.00 for physical pain and mental anguish ($250.00 against Orr and $75.00 against Peck) and $325.00 for violation of Hay's constitutional right not to be subjected to excessive force ($250.00 against Orr and $75.00 against Peck). The jury also awarded Hay punitive damages in the amount of $500.00 against Orr and $250.00 against Peck.
 
 III
 
 8
 * At the time of trial and when the parties filed their briefs in this case, the elements of a Sec. 1983 excessive force claim were set out in Shillingford v. Holmes, 634 F.2d 263, (5th Cir.1981). Under Shillingford a plaintiff had to prove three things: (1) a severe injury, (2) action grossly disproportionate to the need, and (3) malice. Id. at 265. Under that framework Orr and Peck argued that there was insufficient evidence to support findings of a severe injury and malice.
 
 
 9
 Before oral argument the Supreme Court decided Graham v. Connor, --- U.S. ----, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989), and this court decided Johnson v. Morel, 876 F.2d 477 (5th Cir.1989) (en banc). Graham held that excessive force claims should be analyzed under the fourth amendment and its reasonableness standard rather than under substantive due process. This confined focus required a change in the Shillingford test. Guided by Graham, we reworked the elements of a Sec. 1983 excessive force claim. The new elements are: "(1) a significant injury, which (2) resulted directly and only from the use of force that was clearly excessive to the need; the excessiveness of which was (3) objectively unreasonable." Id. at 480. Significantly, malice is not an essential element in this fourth amendment inquiry. We turn to the question of whether this judgment stands despite the change in the controlling law or whether, as defendants argue, the judgment must be reversed or at least remanded for a new trial to give them the benefit of the new law.
 
 
 10
 The first element is a significant injury. Hay's doctor testified that Hay suffered injuries to his jaw, head, shoulders, and leg, and that at least the leg and jaw injuries were serious. The doctor stated that the leg injury, a large bruise to Hay's thigh, resulted from a large amount of trauma and that the dark coloration of the bruise indicated a severe bruise. The doctor testified that the jaw injury was the most severe, exhibiting extensive swelling, preventing Hay from fully opening his mouth, and causing Hay significant pain. Hay was never hospitalized, and the doctor prescribed nothing stronger than Tylenol. The jury found a severe injury. Whether the evidence supports the jury's finding of a severe injury is a close question. Our doubts are not enough to upset this jury's decision. Nor were defendants prejudiced by the later easing of the standard from "severe" to "significant" injury.
 
 
 11
 The second element is causation. Hay can recover damages for injuries resulting only from the excessive use of force by Orr and Peck. He cannot recover for any injury caused by an exercise of force that was not excessive. The district court instructed the jury that a police officer has the right to use force in a reasonable manner. The court asked the jury whether Orr and Peck used excessive force in arresting Hay and whether the excessive use of force proximately caused Hay damages. The jury answered yes to both questions. The later damage question asked the jury to determine the sum that paid now could compensate Hay for the "damages" caused by Orr and Peck. The question did not explicitly confine the jury to injury caused by excessive force. We conclude that there was no practicable risk on these facts that the jury's award of damages included injury resulting from legal force. First, as we explained, the predicate liability questions asked the jury only if excessive force had been used and, if so, whether the excessive force injured Hay. Second, there is no evidence that Hay suffered any injuries at the hands of Orr and Peck due to their legitimate exercise of force. The only injuries to Hay caused by the acts of Orr and Peck were due to Orr's use of her night stick and Peck's application of the carotid restraint which were the only fact candidates for a finding of excessive force.
 
 
 12
 Peck argues that there is no evidence that the carotid restraint caused any injury to Hay. We disagree. Hay's doctor testified that the injury to Hay's jaw could have been caused by Hay being struck by a blunt instrument like a night stick or by a large amount of pressure being applied to the jaw. However, there was no testimony suggesting that Orr hit Hay in the jaw with her night stick. At the same time, the evidence showed that Peck was a large, powerful man weighing over 240 pounds, certainly capable of applying a large amount of pressure to Hay's jaw area in the course of securing the carotid restraint. The jury could have reasonably concluded that Hay was injured by Peck's carotid restraint.
 
 
 13
 The final element is force that is objectively unreasonable. There was testimony at trial that an officer should only use a night stick in self-defense and should avoid directing blows to the head and neck area. Whether this evidence was sufficient to support the jury's finding of malice is a close question, but defendants cannot have been prejudiced by the later lowering of the standard to force that was objectively unreasonable. This is plainly so as to Orr. Peck presents a closer question. Peck testified that the carotid restraint was the preferred method to use because Hay could be quickly subdued using it. However, when Peck arrived Griggs, Griffin, and Orr had Hay face down on the ground. It is true that Hay was not yet completely subdued, but it is also true that Hay was unarmed, four officers were on the scene, and no innocent third parties were nearby. This is enough, if barely, to support the jury finding.
 
 B
 
 14
 To prove a conspiracy Hay was required to show that Orr and Peck had "an agreement to commit an illegal act which resulted in the plaintiff's injury." Thomas v. City of New Orleans, 687 F.2d 80, 83 (5th Cir.1982). There is no evidence to support the jury's finding of a conspiracy. When Orr struck Hay on the head with her night stick, Peck was in his car, away from the scene. Peck was present when Orr hit Hay on the leg, but he was applying a carotid restraint on Hay from behind. This is not enough and there is no other evidence of an agreement to use excessive force. The district court erred in submitting the conspiracy claim to the jury.
 
 
 15
 But, submitting the conspiracy interrogatories to the jury did not necessarily taint the remaining parts of the judgment. This is a value of a Rule 49 submission. A general verdict must ordinarily be reversed when one of two claims was improperly submitted to the jury since it is not possible to tell whether the verdict is based upon the erroneously submitted claim. Neubauer v. City of McAllen, Texas, 766 F.2d 1567, 1575 (5th Cir.1985). However, where there is a special verdict finding for the plaintiff on both properly and improperly submitted claims, reversal is not required if the properly submitted ground is sufficient to support the jury's verdict. Id. at 1576 n. 10; see also Zant v. Stephens, 462 U.S. 862, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983); Williams v. Maggio, 679 F.2d 381 (5th Cir.1982) (en banc), cert. denied, 463 U.S. 1214, 103 S.Ct. 3553, 77 L.Ed.2d 1399 (1983). Since the excessive force claim was sufficient to support the jury's verdict for acts and injuries distinct to the acts of each defendant, the submission of the conspiracy claim was harmless error.IV
 
 
 16
 In Memphis Community School Dist. v. Stachura, 477 U.S. 299, 106 S.Ct. 2537, 91 L.Ed.2d 249 (1986), the Court held that there can be no recovery of general damages for a deprivation of constitutional rights. Rather, recovery must be "grounded in determinations of ... actual losses." Id. 477 U.S. at 308, 106 S.Ct. at 2543. Special verdict questions 11a and 14a which followed the damages instruction allowed the jury to compensate Hay for the intrinsic value of the deprivation of his right not to be subjected to excessive force.[1] This was error. We correct it by eliminating the award from the judgment. Specifically, we reduce the judgment by $325.00 ($250.00 as to Orr and $75.00 as to Peck).
 
 V
 
 17
 Finally, Hay asserts in his cross-appeal that the district court should have awarded attorney's fees. A final judgment was entered on September 16, 1986, which included an award of reasonable attorney's fees and costs although it did not set a specific dollar amount. On October 14, 1986, Hay moved for attorney's fees and costs. The district court never entered an order awarding Hay a specific amount of attorney's fees. Consequently, there is not a final appealable order as to attorney's fees. See Budinich v. Becton Dickinson and Co., 486 U.S. 196, 108 S.Ct. 1717, 1720-21, 100 L.Ed.2d 178 (1988) (holding that a decision on the merits is a final decision giving the court of appeals jurisdiction when the amount of attorney's fees remains to be determined).[2]
 
 VI
 
 18
 In sum, we affirm $1075.00 of the $1,400.00 judgment, reversing only the portion of the judgment based upon the erroneous special verdict questions. We remand the attorney's fees question.
 
 
 19
 AFFIRMED in part, REVERSED in part, and REMANDED.
 
 
 
 [1]
 Questions 11 and 14 are essentially identical. Question 11 applies to Orr; Question 14 applies to Peck. Question 14 provides:
 What sum of money, if any, if paid now in cash would fairly and reasonably compensate the plaintiff for damages caused by Sergeant Peck, if any?
 INSTRUCTION: Plaintiff has the burden of proof on this issue. Answer in dollars and cents, if any, or none.
 a. The violation of plaintiff's constitutional right not to be subjected to an excessive use of force.
 $_______
 b. Physical pain and suffering and mental anguish.
 $_______
 
 
 [2]
 Orr and Peck argue that Hay waived his right to attorneys' fees by not complying with a district court order requiring the parties to "advise the court in writing of any pending motions that require a ruling" or have those motions deemed waived. This is not before us. See Fed.R.App.P. 10(a). We leave the preclusive effect of its order to the district court in the first instance