United States Court of Appeals,

Fifth Circuit.

Nos. 93-1964, 93-9066.

Mary Elizabeth DUNN, Plaintiff-Appellee-Cross-Appellant,

v.

Mike DENK, Defendant-Appellant-Cross-Appellee.

June 13, 1995.

Appeals from the United States District Court for the Northern District of Texas.

Before POLITZ, Chief Judge, REAVLEY and BARKSDALE, Circuit Judges.

POLITZ, Chief Judge:

Mike Denk, a Texas Department of Public Safety officer, appeals an adverse jury verdict in Mary Elizabeth Dunn's civil rights lawsuit. Dunn cross appeals, seeking a new trial on damages. We affirm in part, vacate in part, and remand for further proceedings.

*Background*

Viewing the evidence most favorably to the jury's verdict we find the following scenario. On a weekend pass from a mental hospital, Dunn was being driven home by her friend, Hassan Keshari. As they approached an intersection Keshari spotted trooper Denk, who recently had cited him for minor traffic infractions. "Watch," Keshari told Dunn, "he is going to pull me over." Keshari was right. Although he came to a full stop at the intersection before turning, Denk stopped him and issued a ticket for "cutting the corner." Denk also took Dunn's driver's license to ticket her for not wearing a seatbelt. A check of her license revealed an

outstanding warrant for failure to appear in relation to a speeding ticket.[1]  Denk told Dunn to exit her vehicle;  when she stood up, he informed her that she was under arrest.  Shocked, Dunn collapsed into her seat.  Despite Keshari's protestation that she had just left the hospital, Denk pulled her from the car.  The motion was such that she was thrown, face down, into a ditch by the side of the road.[2]  With his knee in the small of Dunn's back Denk handcuffed her, pulled her up by her arms, placed her in the squad car, and transported her to jail where he called her a "bitch." Denk filed a charge of resisting arrest which the district attorney declined to prosecute.

Dunn brought suit under 42 U.S.C. § 1983, charging Denk with malicious prosecution and the use of excessive force.  A jury returned a verdict for Denk on the former and for Dunn on the latter, awarding $10,000 in punitive damages but no compensatory damages.  After unsuccessfully seeking post-judgment relief, Denk appealed the adverse judgment and Dunn cross appealed the failure to award actual damages.

*Analysis*

1. *Qualified immunity.*

---

[1]The evidence reflects that Dunn had attended driver's school to have the ticket dismissed but that the requisite paperwork had not been completed.

[2]According to Denk's measurements the ditch was about two feet deep and the edge was approximately seven feet from the side of the highway.

Although no longer required,[3] at the time of this incident significant injury was a necessary element of an excessive force claim.[4] Accordingly, to defeat Denk's qualified immunity defense Dunn was obliged to prove a significant injury.[5] Denk maintains the evidence of such was legally insufficient.

Physically, Dunn suffered only bruises but her psychological injury was substantial. The evidence reflects that the incident sidetracked her recovery from depression. According to Dr. Richard C. Bibb, her psychiatrist:

> I felt that she was traumatized emotionally, and our term for that in the psychiatric field is post traumatic stress syndrome.... What Ms. Dunn was left with was just an unforgettable event which ... will endure probably the rest of her life, which will leave her prone to anxiety and panic in situations that are usually considered routine, that will have a very subtle effect on her psychic stability for an undetermined period of time, which could be years.

This was more than mere "transient distress" which does not meet the "significant injury" threshold.[6] Denk insists, however, that psychological harm, no matter how severe, did not constitute significant injury under clearly established law at the time of the arrest. We are not persuaded. It was clearly established before January 1990, when Denk arrested Dunn, that both physical and

---

[3]*Hudson v. McMillian,* 503 U.S. 1, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992).

[4]*Johnson v. Morel,* 876 F.2d 477 (5th Cir.1989) (*en banc* ).

[5]*Wells v. Bonner,* 45 F.3d 90 (5th Cir.1995).

[6]*Johnson,* 876 F.2d at 480.

psychological injuries were compensable in civil rights actions.[7] We developed a significant injury requirement to weed out complaints that were "so minor as to occasion only a tort claim, not a constitutional invasion."[8] As a matter of law, however, this circuit has never restricted the injuries giving a claim constitutional dimension to merely those of a physical nature. To the contrary, as early as 1987 we recognized that psychological injury sufficed to support a constitutional cause of action. In *Lynch v. Cannatella,* an excessive force case, we held that an allegation of "a change in personality ... as if [the plaintiff was] becoming crazy"[9] stated a sufficient injury to withstand summary judgment on the ground of qualified immunity. In *Hinojosa v. City of Terrell, Texas,*[10] although we found that the momentary fear experienced by the plaintiff when a police officer pointed a gun at him did not rise to the level of a constitutional violation, we expressly declined to impose a requirement of physical injury.[11]

---

[7]*See, e.g., Hinshaw v. Doffer,* 785 F.2d 1260 (5th Cir.1986); *Keyes v. Lauga,* 635 F.2d 330 (5th Cir.1981).

[8]*Shillingford v. Holmes,* 634 F.2d 263, 265 (5th Cir.1981). *Shillingford* spoke in term of "severe injury"; when we adapted the *Shillingford* test to meet the requirements of *Graham v. Connor,* 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989), we used the term "significant injury." There is no indication that we intended a "significant injury" to be more severe than a "severe injury." *See Brown v. Glossip,* 878 F.2d 871 (5th Cir.1989).

[9]810 F.2d 1363, 1376 (5th Cir.1987).

[10]834 F.2d 1223 (5th Cir.1988), *cert. denied,* 493 U.S. 822, 110 S.Ct. 80, 107 L.Ed.2d 46 (1989).

[11]*See also Coon v. Ledbetter,* 780 F.2d 1158 (5th Cir.1986) (recognizing the constitutional claim of arrestee's daughter, who

4

The dissent conflates factual and legal sufficiency. In a footnote in *Johnson v. Morel* we stated, "We think it unlikely that such a significant injury will be caused by unnecessary force without significant **physical** injury."[12] The dissent interprets this footnote as a statement of law whereas the majority actually was making a factual observation. As a factual matter, it may well be that a significant injury usually will be physical, as precedents such as *Hinojosa* and *Wisniewski v. Kennard* [13] reflect. The case at bar, however, is exceptional; the evidence of record was sufficient for the jury to find significant injury in Dunn's emotional trauma.[14]

The dissent also suggests that Dunn did not satisfy *Johnson*'s causation requirement—that the injury "resulted directly and only from the use of force that was clearly excessive to the

---

suffered only emotional trauma in the defendants' assault on the family trailer home).

[12]*Johnson,* 876 F.2d at 480 n. 1.

[13]901 F.2d 1276 (5th Cir.), *cert. denied,* 498 U.S. 926, 111 S.Ct. 309, 112 L.Ed.2d 262 (1990). In *Wisniewski,* we found that a prison escapee's complaints of fright and bad dreams resulting from his treatment upon apprehension did not present a jury question of significant injury.

[14]The dissent advances policy arguments against recognition of nonphysical significant injury. Its arguments are moot in light of *Hudson.* In any event, its complaint that a traumatic experience for one person might cause mere transient distress for another highlights a problem with the significant injury requirement itself, not with the acceptance of psychological injury as potentially significant; it puts the focus on the effect of the officer's action on the plaintiff rather than on the relationship between the need for force and the amount of force exerted, where it properly belongs.

need"[15]—because her trauma in part stemmed from her emotional vulnerability at the time of her arrest. The dissent misconstrues the *Johnson* causation requirement. The "directly and only" language was intended to distinguish between injuries resulting from **excessive** force and those resulting from the **justified** use of force.[16] It was not intended to displace the venerable rule that a tortfeasor takes his victim as he finds him[17] or to immunize the exacerbation of a pre-existing condition, leaving the weakest and most vulnerable members of society with the least protection from police misconduct.[18] The evidence supports a finding that the emotional trauma which Denk inflicted on Dunn was a significant injury distinct from the depression for which she was hospitalized, resulting "directly and only" from the use of excessive force.[19]

2. *Juror misconduct.*

Denk contends that juror Chester Cox dissembled during *voir dire* by not admitting to a prior arrest. Cox, by affidavit, insists that he raised his hand but was overlooked. The record

---

[15]876 F.2d at 480.

[16]*Id.; see also Hay v. City of Irving, Texas,* 893 F.2d 796 (5th Cir.1990); *Huguet v. Barnett,* 900 F.2d 838 (5th Cir.1990).

[17]*Pieczynski v. Duffy,* 875 F.2d 1331 (7th Cir.1989).

[18]Unlike the dissent, the majority reads *Wells* as holding that the exacerbation of the plaintiff's pre-existing shoulder injury was not significant. The dissent's interpretation is foreclosed by circuit precedent.

[19]Denk also asserts that *Hudson* requires proof that the defendant acted "maliciously and sadistically to cause harm." 503 U.S. at 6, 112 S.Ct. at 999. *Hudson* was an eighth amendment case. Dunn's fourth amendment claim is governed by *Graham,* which adopts an objective reasonableness test.

6

does not establish misconduct.  Further, Denk's attorney knew of the prior arrest early in the trial but chose to remain silent until the return of an adverse verdict.  The delay waives the objection.[20]

Denk also complains that a previous reprimand in his personnel file was mentioned during jury deliberations, even though the personnel file was excluded from evidence.  Two jurors apparently learned of the rebuke from a newspaper article which the district court directed the jury to disregard.  The bare mention of a prior reprimand does not raise a reasonable possibility of prejudice, particularly in light of the court's admonishment.[21]  The district court did not abuse its discretion in denying Denk's motion for a new trial.

3. *Damages.*

After finding excessive force, the jury awarded $10,000 in punitive damages but no compensatory damages.  We agree with the parties that the denial of compensatory damages was inconsistent with the finding of liability, which presupposed significant injury.  We are not persuaded that the inconsistency demonstrates impermissible compromise.  The jury obviously struggled mightily to reach a verdict;  it succeeded in doing so.  Its confusion over the appropriate allocation of damages does not undermine our confidence

---

[20]*Garcia v. Murphy Pacific Marine Salvaging Co.,* 476 F.2d 303 (5th Cir.1973).

[21]*Cf. Bolton v. Tesoro Petroleum Corp.,* 871 F.2d 1266 (5th Cir.) (brief mention of extraneous information, corrected by jury foreman, does not create a reasonable possibility of prejudice), *cert. denied,* 493 U.S. 823, 110 S.Ct. 83, 107 L.Ed.2d 49 (1989).

7

that in reaching its verdict it found the use of excessive force.[22] We accordingly affirm the finding of liability and remand for a new trial limited to the issue of damages, both compensatory and punitive.

Denk further challenges the award of punitive damages. We find ample support in the record for such an award. We do not reach the procedural and legal objections[23] because of our decision to order a partial new trial.

4. *Attorney's fees.*

The district court awarded Dunn $17,500 in attorney's fees of the $65,500 requested. Nonetheless Denk claims the award was excessive, noting that Dunn obtained only $10,000 in damages compared to the $200,000 sought.[24] This method of weighing the value of legal services fails to take cognizance of the degree of success obtained.[25] The award was not an abuse of discretion. On cross appeal, Dunn maintains that she is entitled to additional attorney's fees if she wins higher damages on retrial. We do not

---

[22]To impeach the verdict, Denk submits the affidavit of a juror who subsequently recanted her vote. It is well established that a juror may not testify to the course of deliberations or to the jury's mental processes. Fed.R.Evid. 606(b); *United States v. Straach,* 987 F.2d 232 (5th Cir.1993).

[23]Denk contests the district court's entry of a judgment for $1 in nominal damages and argues that punitive damages may not be assessed without the award of compensatory damages.

[24]Defendant's motion for summary judgment on the grounds of qualified immunity was denied. We affirmed, 954 F.2d 722 (5th Cir.1992) (memo).

[25]*Cf. TK's Video, Inc. v. Denton County, Tex.,* 24 F.3d 705 (5th Cir.1994).

reach that argument; it is premature.

AFFIRMED as to liability, VACATED and REMANDED for further proceedings as to damages consistent herewith.

RHESA HAWKINS BARKSDALE, Circuit Judge, dissenting:

"Delays have dangerous ends." *Henry VI, Part 1* (1592) act 3, sc. 2, 1.33. This is especially true for law enforcement officers making an arrest. It is no less true for the arrest made by Officer Denk. For this Fourth Amendment excessive force claim that arose in 1990, the majority has incorrectly applied the applicable qualified immunity standard of *Johnson v. Morel,* 876 F.2d 477 (5th Cir.1989) (en banc). I respectfully dissent.

## I.

As the majority notes, we must view the evidence in the light most favorable to the jury's verdict. But, even in that light, certain critical parts of the puzzle are missing from the majority's summary; they need to be included in order to better appreciate the misunderstanding, and regrettable incident, that took place when Dunn was arrested.

Dunn testified that, because she was having problems with depression, was crying all the time, and needed help, she was hospitalized. While on a weekend pass, and riding as a passenger in a vehicle driven by her boyfriend, the vehicle was stopped by Officer Denk. (His right to stop the vehicle, as well as to later arrest Dunn, are not in issue.)

The vehicle pulled over to the side of the road on a grassy shoulder. From the side of the road to the ditch was approximately

seven feet;  the ditch was dry and covered with tall grass.  And, obviously, because the car was beside the road, from the passenger door to the ditch was no more than a step or two.  (Officer Denk testified that when you stepped from the passenger side of the vehicle, you were almost in the ditch.)

Dunn is approximately 5N 70 tall, and, at the time of the incident, weighed approximately 160 pounds;  Officer Denk was approximately the same size.  After Dunn exited the vehicle, and Officer Denk announced that she was under arrest, she sat back down in the vehicle;  and when she would not exit, Officer Denk forcefully pulled her out.  They both ended up in the grassy ditch.  (His version is they both lost their balance.)

There were four witnesses to the incident:  Dunn, her boyfriend, Officer Denk, and a bystander.  It is disputed when the boyfriend advised Officer Denk that Dunn had been in the hospital.  The bystander heard the comment when Officer Denk was pulling Dunn from the vehicle, and this is in line with the boyfriend's testimony;  in short, the comment was made while the incident was in progress.[1]

The jury was instructed properly for a constitutional excessive force claim that arose in 1990.  For example, using language from *Graham v. Connor,* 490 U.S. 386, 396-97, 109 S.Ct.

_____

[1]Perhaps in order to set the tone, the majority states also that, after Officer Denk transported Dunn to jail, "he called her a "bitch' ".  I fail to see how this comment has any bearing on whether excessive force had been used earlier.  (Officer Denk testified that, upon reaching the jail, he advised the jailer that he "better watch her, she's acting like a bitch".)

1865, 1871-72, 104 L.Ed.2d 443 (1989), quoted in *Johnson,* 876 F.2d at 479, discussed *infra,* the charge cautioned the jury that, for Fourth Amendment purposes, in judging the "reasonableness" of the force used, "[t]he nature of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." The charge on qualified immunity is not at issue; we must determine only whether, as a matter of law, the jury could reasonably find as it did.

## II.

It goes without saying that, to avoid a qualified immunity defense, a plaintiff must claim a constitutional violation that was clearly established at the time of the alleged wrongful conduct. *E.g., Walton v. Alexander,* 44 F.3d 1297, 1301 (5th Cir.1995). And, it is undisputed that the clearly established law for this case is stated in *Johnson.* 876 F.2d at 479-80.[2] It provides:

> A plaintiff can thus prevail on a Constitutional excessive force claim only by proving each of these three elements:
>
> (1) a significant injury, which
>
> (2) resulted directly and only from the use of force that was clearly excessive to the need; and the excessiveness of which was

---

[2] *See Harper v. Harris County, Tex.,* 21 F.3d 597, 600 (5th Cir.1994) (recognizing that *Johnson* 's significant injury prong was overruled by *Hudson v. McMillian,* 503 U.S. 1, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992)). But, as the majority states, and under the well-established law at the time of the incident at issue here, *Johnson* is the applicable standard. *Harper,* 21 F.3d at 601.

11

(3) objectively unreasonable.

> If any one of these elements fails, so too does the plaintiff's claims. We overrule all previous decisions of this circuit to the contrary. *Id.* at 480 (internal footnote omitted). As discussed below, this case fails the first two prongs of the *Johnson* test.

## A.

The majority recognizes that Dunn's extremely minor physical injuries (*e.g.,* bruises to her arm and hip) failed to establish significant injury. *See Wise v. Carlson,* 902 F.2d 417 (5th Cir.1990) (finding bruises to chest and forearm, as well as hematoma on upper eyelid insufficient as a matter of law). Therefore, the question is framed squarely: Can nonphysical injury qualify as significant injury under *Johnson?* And, if so, was the right to be free from nonphysical injury clearly established in 1990—when the incident occurred?

## 1.

In concluding most summarily that, as a matter of law, the evidence was legally sufficient for the nonphysical injury to be "significant", the majority begins by stating, "It was clearly established before January 1990 ... that both physical and psychological injuries were compensable in civil rights actions".[3] But, this is not the issue. I do not question that, once a

---

[3]The majority cites two pre-*Johnson* cases, both of which involved sufficient *physical* injury to support excessive force claims. *See Hinshaw v. Doffer,* 785 F.2d 1260 (5th Cir.1986) (various physical injuries requiring two-day hospitalization); *Keyes v. Lauga,* 635 F.2d 330 (5th Cir.1981) (concussion). In both cases, the plaintiff was allowed to recover damages for nonphysical injury, but neither case holds that nonphysical injury, standing alone, can support an excessive force claim.

12

plaintiff has satisfied the *Johnson* test, she may be compensated for nonphysical injury. The issue is whether a nonphysical injury, standing alone, will pass the *Johnson* test. For that question, the majority relies primarily on one case (again, pre-*Johnson* ), *Lynch v. Cannatella,* 810 F.2d 1363 (5th Cir.1987), which does not support its conclusion.

The majority notes that *Lynch* speaks of a "change in personality" allegation. But, this allegedly resulted from being "beaten and drugged", *id.* at 1376; and only allegations were in issue, the case being on interlocutory appeal. Among other distinguishing features from Dunn's nonphysical injury, our court noted in *Lynch* that the plaintiff alleged physical and nonphysical injury, and *Lynch* was only in the initial stages of litigation. Here, Dunn's action having been tried, it is beyond dispute that there is no actionable physical injury. In sum, I cannot agree with the majority's suggestion that *Lynch* stands for the proposition that our court held before 1990 that psychological injury, *without more,* can support a constitutional excessive force claim.[4] Indeed, a case cited by the majority, *Hinojosa v. City of Terrell,* 834 F.2d 1223, 1230 (5th Cir.1988), *cert. denied,* 493 U.S. 822, 110 S.Ct. 80, 107 L.Ed.2d 46 (1989), decided after *Lynch* (but,

---

[4]The majority also cites *Coon v. Ledbetter,* 780 F.2d 1158 (5th Cir.1986) (yet again, pre-*Johnson* ). Although one of the plaintiffs in *Coon* appeared to have suffered only "sleeplessness and nightmares", the sufficiency of the injury was not at issue. Our circuit has held squarely that this type of injury is insufficient under the *Johnson* test. *Wisniewski v. Kennard,* 901 F.2d 1276, 1277 (5th Cir.), *cert. denied,* 498 U.S. 926, 111 S.Ct. 309, 112 L.Ed.2d 262 (1990).

13

once again, before *Johnson* ), suggests that the issue was undecided in our circuit: "This Court does not here determine whether or not some type of physical injury will in *every* instance be necessary for [an excessive force claim]." (Emphasis in original.)

Moreover, the precedential value, if any, of *Lynch* is otherwise most questionable, because, as noted, it pre-dates our en banc decision in *Johnson.* As quoted earlier, after establishing the excessive force/qualified immunity test, the *Johnson* court stated that it "overrule[d] all previous decisions of this circuit to the contrary". 876 F.2d at 480. In addition, in a footnote to the term "significant injury", *Johnson* stated: "We think it unlikely that such a significant injury will be caused by unnecessary force without significant *physical* injury." *Id.* at 480 n. 1 (emphasis in original). Although this language was *dicta,* it nonetheless casts into serious doubt any prior decisions of our court which might suggest that nonphysical injury is *Johnson* "significant injury".

Therefore, prior to today's decision, whether nonphysical injury can be "significant injury" was an open question. *See Wisniewski v. Kennard,* 901 F.2d 1276, 1277 (5th Cir.) (refusing to reach "difficult" issue of whether significant injury exists absent physical injury), *cert. denied,* 498 U.S. 926, 111 S.Ct. 309, 112 L.Ed.2d 262 (1990). It is necessary, therefore, to examine more closely today's swift, bold step.[5]

_____

[5]As described in note 2, *supra,* it is now established that *Johnson* is applicable to constitutional excessive force claims arising only during the relatively brief period between *Johnson*

14

The starting point, of course, is *Johnson,* which was guided by *Graham v. Connor,* 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989), handed down just two months earlier. As dictated by *Graham, Johnson* recognized that the standard is Fourth Amendment "reasonableness", and that

> [t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.

876 F.2d at 479 (quoting *Graham,* 490 U.S. at 396-97, 109 S.Ct. at 1871-72). Accordingly, in a passage that demonstrates compellingly why Officer Denk is sheltered by qualified immunity for the incident in issue, *Johnson* counseled that

> [i]njuries which result from, for example, an officer's justified use of force to overcome resistance to arrest do not implicate constitutionally protected interests. An arrest is inevitably an unpleasant experience. An officer's use of excessive force does not give constitutional import to injuries that would have occurred absent the excessiveness of the force, or to minor harms. Nor can transient distress constitute a significant injury.

*Id.* at 480.

As quoted, *Johnson* observed that mere "transient distress" would not suffice, and found it "unlikely" that *any* nonphysical injury could be sufficient. *Id.* at 480 & n. 1. Our en banc court's *inclination* in *Johnson* to reject nonphysical injury creates, at least for me, a reluctance to adopt the majority's position. Within the excessive force framework of *Johnson,* the

_____

and *Hudson*—July 5, 1989 to February 25, 1992, approximately 32 months. In light of the considerable passage of time since then, statutes of limitation, etc., we have no way of knowing how many *Johnson* claims are still percolating in our circuit.

15

allowance of nonphysical injury gives rise necessarily to most difficult causation questions. For example, and viewing the circumstances in Dunn's favor, Dunn was thrown into a dry ditch covered with tall grass and handcuffed; as a result, she suffered "post traumatic stress syndrome.... which will leave her prone to anxiety and panic ... for an undetermined period of time". Compare this with *Wisniewski v. Kennard,* where a deputy sheriff hit a prisoner in the stomach twice, put the barrel of a gun in the prisoner's mouth, and "threatened to blow his head off". 901 F.2d at 1277. Under what were clearly stronger circumstances than those presented in today's case, the prisoner in *Kennard* alleged that he was frightened and had bad dreams. *Id.* Our court upheld summary judgment for the deputy sheriff, finding no significant injury under *Johnson. Id.*

What can be made of these two very different results—results from decidedly different circumstances? Was the prisoner's mental health extraordinarily stable, or is Dunn's particularly fragile? And if hers is particularly fragile, would her mental condition have arisen simply from her arrest, absent the use of any force?[6] Regardless of the answers to these questions, the point is only that, in the context of *Johnson* excessive force, the subjectivity of nonphysical injury creates enormous difficulty vis-a-vis the

[6]Evidence in the record points up this possibility. For instance, it appears that a large part of Dunn's anguish resulted merely from the humiliation of being arrested, and her fear that Officer Denk might shoot her companion if he attempted to intervene in her arrest (there is no evidence that her companion made any significant attempt to intervene, or that Officer Denk tried to shoot him).

16

leeway that must be granted law enforcement officers working in tense, unpredictable, fast moving, and dangerous situations. As *Johnson* stated, "[a]n arrest is inevitably an unpleasant experience." 876 F.2d at 480. The entire thrust of *Johnson* is to secure working room for law enforcement officers, so that they can perform their work (sadly, needed now, more than ever, in this Nation) without fear of civil liability at every turn. And, as discussed below, this is why law enforcement officers are entitled to guidance on whether their conduct will result in civil liability. In short, *Johnson* 's implied rejection of nonphysical injury was correct.

2.

In the alternative, it is well to remember that the qualified immunity analysis does not necessarily determine whether an official's conduct was *proper,* only whether it can be the basis for civil liability. Therefore, even assuming *arguendo* that nonphysical injury can be "significant" under *Johnson,* the question remains whether this rule was "clearly established" at the time of the incident in issue, so as to place Officer Denk outside the protection of qualified immunity. If it was not, Officer Denk is protected by that immunity. *Anderson v. Creighton,* 483 U.S. 635, 639-40, 107 S.Ct. 3034, 3038-39, 97 L.Ed.2d 523 (1987); *Doe v. State of Louisiana,* 2 F.3d 1412, 1416 (5th Cir.1993), *cert. denied,* --- U.S. ----, 114 S.Ct. 1189, 127 L.Ed.2d 539 (1994).

It was "clearly established" in 1990 that Dunn was entitled to be free from significant injury resulting from unreasonable force.

17

*Johnson,* 876 F.2d at 480. The question, however, is whether Officer Denk should be held liable for causing an injury, the significance of which was not clearly established, and instead, as per *Johnson,* was clearly *doubted.* Guiding my concern is the Supreme Court's pronouncement that "[t]he contours of the right must be sufficiently clear [so] that a reasonable official would understand that what he is doing violates that right." *Anderson,* 483 U.S. at 640, 107 S.Ct. at 3039. As the Court has explained, the very purpose of the "clearly established right" requirement is so that officials may "reasonably ... anticipate when their conduct may give rise to liability for damages". *Davis v. Scherer,* 468 U.S. 183, 195, 104 S.Ct. 3012, 3019, 82 L.Ed.2d 139 (1984).

We assume that officials know the law on excessive force. Accordingly, in 1990, a reasonable officer could conclude correctly that he must only make certain his use of force, no matter how unreasonable, did not cause "significant injury".[7] Furthermore, in light of *Johnson,* an officer could conclude reasonably that "significant injury" did not include nonphysical injury.[8] But

_____

[7]No doubt, and as it should have, *Johnson* afforded broad working room for police officers. In any event, the correctness of that decision is not in issue; we apply the law as it existed in 1990.

[8]In addition, it seems clear that Officer Denk was not aware of Dunn's mental condition. Dunn's boyfriend testified that he told Officer Denk that Dunn had just been released from the "hospital"; but, as noted, this was not until Dunn was being removed from the vehicle. Moreover, the companion made no reference to a "mental hospital", and gave no other indication that Dunn was emotionally unstable. In fact, Dunn's doctor admitted that Officer Denk "had no way of knowing that [Dunn] was a patient in a psychiatric hospital". (The reference to the hospital may well have put Officer Denk on notice that he was

18

surely, at the very least, the "contours of the right" were not sufficiently clear.  Rather than providing a basis for an officer to "reasonably anticipate" liability, *Johnson* has been made misleading, considering the majority's holding today, because *Johnson* clearly suggests, even if it does not hold, that nonphysical injury will be insufficient.

Therefore, regardless of whether an excessive force plaintiff has the right, under *Johnson,* to constitutional protection against nonphysical injury, that right was not clearly established in 1990. Accordingly, Officer Denk was entitled to qualified immunity.

B.

In addition to significant injury, *Johnson* requires, *inter alia,* that the injury result "*directly and only from* the use of force that was clearly excessive to the need".  876 F.2d at 480 (emphasis added).  On this point, our court's very recent precedent requires a result contrary to the majority's.

In *Wells v. Bonner,* 45 F.3d 90, 92 (5th Cir.1995), Wells brought, among other things, a claim for the excessive force used against him during his arrest, alleging injury to his shoulder. Our court reversed the denial of qualified immunity, holding:

> Wells's claim fails to satisfy the second element of the excessive force test because his injury did not result "directly and only from" the officers' use of force.  It is true that the record reflects that his shoulder was injured by the officers during the arrest.  Wells admits, however, and other portions of the record also reflect, that the injury was an exacerbation of an old shoulder injury for which Wells previously had undergone surgery.  Thus, Wells's injury did

dealing with a *physically* weak individual;  but, again, Dunn's physical injuries are not in issue.)

19

not result "directly and only from" the officers' use of force. *Id.* at 96.[9]

The case at hand is virtually indistinguishable from *Wells.* Dunn's original complaint admitted that her nonphysical injury consisted only of a "relapse of her mental condition", and that, at the time of the incident, she was depressed and vulnerable. The record contains substantial evidence of Dunn's past mental difficulties. Eleven days before her encounter with Officer Denk, she was hospitalized, in a state of "severe depression and agitation". And, only about four hours before the incident, she was released from the hospital on a "therapeutic pass", in order "to see if she could cope outside the hospital setting".

Dunn's doctor testified that Dunn "wasn't prepared for [the incident]" and that the incident "was a shock, and it—of all the issues that we were working with in terms of her recovery, this threw everything off track". Describing her own condition, Dunn stated that her "depression was biological, and it seemed like every little issue just compounded what was going on".

In view of the evidence of Dunn's prior mental condition, it is clear that, as in *Wells,* Dunn's mental injury did not result "directly and only from" Officer Denk's use of force. As with Wells' shoulder injury, Dunn's alleged mental injury as a result of

---

[9]The majority reads *Wells* as holding only that the plaintiff's exacerbation of his pre-existing injury was not a significant injury. However, the clear and specific holding of *Wells* rests on the causation prong of the *Johnson* test, not the significant injury prong. The majority also states that my reading of *Wells* is contrary to circuit precedent, but cites no authority for this observation.

20

Officer Denk's actions was, at worst, an exacerbation of a pre-existing condition. As such, her claim fails the causation element of *Johnson.*

Finally, along this line, it bears repeating that the jury found that Officer Denk's actions did *not* injure Dunn in any shape, form, or fashion. It awarded only punitive damages, refusing to award damages to "compensate ... Dunn for ... damages proximately caused by the use of [Officer Denk's] excessive force...."[10] How

---

[10]The jury's response to the actual damages special interrogatory was as follows:

> What sum of money, if any, would fairly and reasonably compensate Plaintiff Mary Elizabeth Dunn for each of the following damages proximately caused by the use of excessive force for which you have found that Defendant Mike Denk is liable?
>
> Answer in dollars and cents or "None".

> a. Past mental anguish, emotional distress, and mental pain and suffering:
>
> ANSWER: $<u>NONE</u>

> b. Future mental anguish, emotional distress, and mental pain and suffering:
>
> ANSWER: $<u>NONE</u>

> c. Lost income:
>
> ANSWER: $<u>NONE</u>

> d. Medical bills:
>
> ANSWER: $<u>NONE</u>

21

can we hold that Dunn's alleged injuries were "directly and only from" Officer Denk's actions, when the jury found none?  In my opinion there is but one answer:  we cannot.[11]

### III.

This case is a classic example of the upset and misunderstanding that can result from an arrest.  Surely, pursuant

---

      e.    Past physical impairment:

      ANSWER:    $<u>NONE</u>

      f.    Past physical pain and suffering:

      ANSWER:    $<u>NONE</u>

[11]The majority attempts to find causation by stating that the *Johnson*

> "directly and only" language was intended to distinguish between injuries resulting from **excessive** force and those resulting from the **justified** use of force.  It was not intended to displace the venerable rule that a tortfeasor takes his victim as he finds him or to immunize the exacerbation of a pre-existing condition, leaving the weakest and most vulnerable members of society with the least protection from police misconduct.

(Emphasis by majority;  footnotes omitted.)  Because I believe the causation element is flatly precluded by *Johnson* and *Wells,* I need respond only briefly.

The "tortfeasor takes his victim as he finds him/weakest and most vulnerable" argument would truly open the floodgates for excessive force claims for nonphysical injury.  Doubtless, this is why *Johnson* struck the necessary balance that it did.  In short, the majority is doing nothing but attempting to rewrite *Johnson.*  This it cannot do.

22

to the requisite objective reasonableness standard, Officer Denk, under the circumstances, was justified in removing Dunn from the vehicle.  When he told her she was under arrest, she sat back down in the car.  What was a reasonable officer to do—tell her he was going to count to three?  Objectively, Dunn's reaction to the arrest announcement was passive resistance, indicating she was not going to comply with Officer Denk's instructions.  He acted as a reasonable officer would, should, *and, indeed, must.*  For the reasons stated, I would reverse the judgment on qualified immunity, and, therefore, must respectfully dissent.

———

———

———

———

———

———