# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
March 22, 2011

Lyle W. Cayce
Clerk

No. 10-40434

FRANK DRAPELA,

Plaintiff-Appellee

v.

UNITED STATES OF AMERICA,

Defendant-Appellant

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 1:08-CV-44

Before KING, DAVIS, and SOUTHWICK, Circuit Judges.

PER CURIAM:[*]

Defendant-appellant the United States (the government) appeals the district court's judgment in favor of plaintiff-appellee Frank Drapela based on the court's finding that the M/V CAPE VICTORY, a government-owned vessel, was unseaworthy, which condition proximately caused Drapela's injuries. We affirm the judgment of the district court.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 10-40434

I.

Drapela was injured while working on the M/V CAPE VICTORY, a vessel assigned to the Ready Reserve Force, a component of the National Defense Reserve Fleet. The vessel is under the control of the Maritime Administration and is managed and operated by Keystone Shipping Services, Inc. Vessels under this program are kept in ready reserve and must be ready to sail within three to four days of activation in times of need. At the time of the incident the vessel was moored in Beaumont, Texas.

Drapela had been the permanent bosun of the M/V CAPE VICTORY since 1998. As bosun Drapela was the senior unlicensed member of the ship's deck crew. While the vessel was on reserve status, Drapela's job was to maintain everything outside of the engine room and oversee one crew member. Chief Mate Kevin Brooks was in charge of the entire vessel, including maintenance, while it was in port, and he sails as captain when the vessel goes to sea.

In order to facilitate the carriage of cargo on the decks, 165 D-rings were installed on the vessel. The D-rings did not have grease fittings, and over time they rusted and became frozen or immobile and nonfunctional.

In February 2007, a rumor circulated around the port that the ship was about to be activated. Drapela and Brooks gave some credence to the rumor and proceeded on the premise that the vessel would sail within a few days. Drapela told Brooks that the D-rings were frozen. Brooks told Drapela that he "knew what to do," which Drapela understood to mean that he should start loosening the D-rings through physical force as he had been taught on a prior occasion. Drapela used a sledgehammer, a welding rod, and a crowbar to loosen the D-rings because these were the only tools made available to him for the job. To loosen each D-ring, Drapela would pound it on different sides with the sledgehammer. Once the ring began to loosen, he would use the crowbar to pry the ring up to a thirty degree angle and then continue with the sledgehammer

2

No. 10-40434

until the ring was loose.  He would sporadically blast the rust and use a sharpened welding rod to pry some of the rust loose.  Because of the belief that the ship would sail within days, Brooks led Drapela to believe there was some urgency to complete this task.  According to Drapela, his assistant was a small man and physically unable to assist him.

Drapela worked on this project a full day on Monday, February 5, 2007, a half-day on Tuesday, February 6, 2007, and another full day on Wednesday, February 7, 2007. Although he felt no discomfort while he was working, Drapela woke up on Thursday, February 8 with severe pain in his forearm, head, and neck and could not move two fingers on his right hand.

Dr. Esses, Drapela's treating physician, testified that there is a medical connection between Drapela's work loosening the D-rings and the injuries to his spine.  Repeated activity that stresses the neck, like pounding something with a sledgehammer, can cause or exacerbate problems in the spine.

Drapela filed suit alleging negligence under the Jones Act and unseaworthiness under general maritime law.  After a two-day bench trial, the district court rejected the Jones Act negligence claims because the employer had no notice that the method being used to loosen the D-rings (including tool selection) was unsafe.  Drapela had previously used a sledgehammer in his work without incident.  Therefore, the district court concluded that his injuries were not foreseeable to the shipowner.  The district court similarly rejected claims of negligence based on failure to properly maintain the D-rings, failure to install grease fittings, and failure to supervise.  Drapela does not appeal those findings.

On the issue of unseaworthiness, the district court found that the government did not provide an adequate crew of sufficient manpower to perform the tasks required and that the vessel was unfit because inadequate tools were made available to Drapela to free the 165 frozen D-rings within the time he thought he had to complete the work.  Because the purpose of the vessel was to

No. 10-40434

carry cargo for the military, the court found that the D-rings were necessary for that mission and were unfit for that purpose in their rusted state. In sum, the district court concluded that "the enormity of the task and the inadequacy of the tools caused Drapela's spine injuries." The government appeals.

## II.

Findings of the district court on the issues of negligence and causation are findings of fact, subject to review for clear error. *Johnson v. Cenac Towing, Inc.*, 544 F.3d 296, 303 (5th Cir. 2008). Findings regarding seaworthiness are also findings of fact, subject to the same standard. *Jackson v. OMI Corp.*, 245 F.3d 525, 528 (5th Cir. 2001) (citing *McAllister v. United States*, 348 U.S. 19, 20 (1954)). "A finding is clearly erroneous when, after studying the record, the reviewing court is left with the 'definite and firm conviction that a mistake has been committed.'" *Id.*

## III.

The plaintiff bears the burden of establishing that a vessel is unseaworthy and that the unseaworthy condition caused his injuries. *Garcia v. Murphy Pac. Marine Salvaging Co.*, 476 F.2d 303, 305 (5th Cir. 1973). To be seaworthy, a vessel and its appurtenances must be reasonably fit for their intended uses. *Mitchell v. Trawler Racer, Inc.*, 362 U.S. 539, 550 (1960).

The government's principal argument is that the condition of the D-rings frozen to the deck was not an unseaworthy condition that caused Drapela's injury. The government argues that to find legal causation based on the frozen D-rings is tantamount to holding that whenever a shipboard component is unseaworthy and requires repair to make it functional, liability results if a seaman is injured in the course of repair. We pretermit any consideration of whether the record supports a holding that the D-rings were a proximate cause of Drapela's injury.

4

No. 10-40434

As the Supreme Court stated in *Usner v. Luckenback Overseas Corp.*, 400 U.S. 494, 499 (1971), an unseaworthy vessel may result from any number of causes:

> A vessel's condition of unseaworthiness might arise from any number of circumstances. Her gear might be defective, her appurtenances in disrepair, her crew unfit. The number of men assigned to perform a shipboard task might be insufficient. The method of loading her cargo or the manner of its stowage might be improper. For any of these reasons, or others, a vessel might not be reasonably fit for her intended purpose.

(internal citations omitted). It is well established and the government concedes that an unsafe method of work is one of the conditions that may render a vessel unseaworthy. *Johnson v. Offshore Express, Inc.*, 845 F.2d 1347, 1354-55 (5th Cir. 1988) (citing *Vargas v. McNamara*, 608 F.2d 15, 18 (1st Cir.1979)); *Rogers v. Eagle Offshore Drilling Services, Inc.*, 764 F.2d 300, 303 (5th Cir. 1985) ("[A]n unsafe method of work may render a vessel unseaworthy . . . ."); *Aubey v. Noble Drilling (U.S.), Inc.*, 24 F.3d 240, *2 (5th Cir. 1994) (per curiam) ("[U]nseaworthiness may be manifested by an unsafe method of work . . . ."). The district court expressly found the vessel unseaworthy because of an inadequate crew and inadequate tools to perform the task. It also found that "the enormity of the task and the inadequacy of the tools caused Drapela's spine injuries." We read this as a more general conclusion that Chief Mate Brooks chose an unsafe method of work to free the D-rings, which rendered the vessel unseaworthy and caused Drapela's injuries.

The issue for decision then narrows to whether these findings are supported by the record and are not clearly erroneous. The record is sufficient to support the district court's finding that the assignment to Drapela to physically free up 165 D-rings in a limited period of time was unreasonably difficult for one person to perform. The record also supports the findings that

5

No. 10-40434

the tools provided to Drapela to perform this task were inadequate[1] and that the method chosen to perform this task was unsafe.  Each of these findings supports the district court's conclusion that the vessel was unseaworthy and the unseaworthy condition caused the plaintiff's injury.

IV.

Accordingly, the district court's judgment is AFFIRMED.

---

[1] Chief Mate Brooks testified that "In retrospect we thought we probably could have used the forklift. . . . [Y]ou put a tongue or fork underneath the D-ring and pick it up."